## KRAUSHAAR *v*. BUNNY RUN REALTY CO.

1. Vendor and Purchaser—Subdivision of Land Purchased on Land Contract—Forfeiture—Rights of Purchasers of Other Lands from Same Subdivider.

   Lot purchasers in parcels other than one on which bathing beach and other recreational facilities were located and which had been previously purchased under land contract by corporation which subdivided all the parcels had no contractual rights in the recreational facilities binding upon the holder of the vendor interest of the farm on which such facilities were located after land contract had been terminated by summary proceedings for default nor were such holders subject to injunction at the suit of such lot purchasers.

2. Same—Injunction—Equity—Fraud—Adequacy of Remedy at Law—Forfeiture of Land Contract for Subdivision.

   Lot purchasers in subdivision comprising seven farms, each of which was purchased by corporate subdivider under a separate land contract, are not entitled to injunctive or other equitable relief against subdivider and the individual incorporators from whom relief is sought for alleged fraud or breach of purchasing contracts, after forfeiture of land contract for purchase of farm on which were located certain recreational facilities in which lot purchasers claimed exclusive rights, the remedy therefor, if any, being on the law side of the court.

3. Same—Forfeiture of Land Contract for Subdivision—Rights of Lot Purchasers.

   Lot purchasers from corporate subdivider which had purchased farm, developed certain recreational facilities thereupon, and then defaulted upon its contract lost all of their rights upon termination of the land contract for the farm by summary proceedings; hence such lot purchasers were not entitled to restrain use of recreational facilities by parties claiming under vendor after it regained possession in violation of rights obtained by plaintiffs from subdivider.

4. DEDICATION—SUBDIVISION LOT PURCHASERS—PUBLIC RIGHTS.

Joinder of vendor of farm under land contract in dedication of drives, roads, boulevards and terraces as shown on corporate subdivider's plat to the use of lot owners of the plat and its proprietors did not vest in lot purchasers the exclusive right to the use of such drives and boulevards as there is no such thing as a dedication between an owner and individuals, rights based upon dedication and acceptance of the plat being assertable, if at all, as a right or use to which public in general is entitled.

5. SAME—PUBLIC RIGHTS.

The essence of a dedication to public uses is that it shall be for the use of the public at large and while there may be a dedication of lands for special uses, it must be for the benefit of the public and not for any particular part of it.

6. VENDOR AND PURCHASER—SUMMARY PROCEEDING—SURRENDER OF POSSESSION—MORATORIUM RELIEF.

Summary proceeding instituted by vendors of a farm after corporate purchaser had subdivided it, sold lots, and then defaulted on the land contract was not fatally defective because no writ of restitution was actually issued and possession was voluntarily surrendered nor because bill for moratorium relief, filed while summary proceeding was pending, was apparently dismissed without relief having been decreed.

Appeal from Oakland; Hartrick (George B.), J. Submitted April 10, 1941. (Docket No. 53, Calendar No. 41,551.) Decided June 2, 1941.

Bill by Charles Kraushaar and others against Bunny Run Realty Company and Lake Homes Realty Company, Michigan corporations, Charles C. Leadbetter, Elizabeth E. Sweet, Donald Ferguson, and James Palmer to restrain the exclusion of plaintiffs and others from Elizabeth Park and other premises, the charging of a fee for the use thereof, inviting the general public to use said premises, to declare a trust thereof, and for other relief. Bill dismissed. Plaintiffs appeal. Affirmed.

*Frederic T. Harward* and *Herbert A. Bellinger,* for plaintiffs.

*Donald C. Porritt,* for defendants Bunny Run Realty Company and James Palmer.

NORTH, J. The defendant Lake Homes Realty Company is a Michigan corporation. In 1924, through its incorporators it purchased on contract the so-called Porritt farm property in the vicinity of Long Lake, Orion township, Oakland county, for the purpose of subdividing the same and selling lots as sites for cottages and summer homes. For the same purpose, it later acquired six neighboring farms, each being purchased on a separate land contract from different vendors. Each farm was platted and subdivided and lots sold therein by the Lake Homes Realty Company as grantor or vendor. Thereafter, the Lake Homes Realty Company defaulted on its contract for the purchase of the first parcel, the Porritt farm. The vendors started summary proceedings before the circuit court commissioner in July, 1935, and on September 19, 1935, judgment for restoration of possession was entered. No writ of restitution was issued; but possession of the premises was peacefully surrendered by the corporation. Shortly after taking possession, the vendors of the Porritt farm caused the defendant, Bunny Run Realty Company, to be incorporated, and by quitclaim deed conveyed title to the Porritt farm to the last-mentioned corporation. This corporation continued to sell lots and to manage the property. In addition to the two corporate defendants above mentioned, the plaintiffs have also joined as defendants the individual incorporators of the Lake Homes Realty Company and one James Palmer, who has been placed in control by the Bunny Run Realty Company of certain facilities located on the Porritt farm.

Plaintiffs are lot owners, one from each of the seven subdivisions platted from the farms which

the Lake Homes Realty Company was buying on land contracts. The lots in question had been purchased by plaintiffs from this company before the 1935 summary proceedings in which it lost possession of the Porritt farm, as above noted. Joined with them as plaintiff is the Bunny Run Protective Association, a nonprofit corporation organized in 1937, composed of and claiming to represent lot owners in the various parcels above mentioned.

It appears to have been the plan of the Lake Homes Realty Company to call the entire development, as composed of the seven parcels, the Bunny Run Country Club. In soliciting sales of lots the purchasers were referred to as "members of Bunny Run Country Club" and promised exclusive rights and privileges. Plaintiffs claim that the Lake Homes Realty Company and its officers promised prospective purchasers that:

"(a) They would have privileges of the large lake or Long Lake, the beaches, the athletic fields, tennis courts and clubhouse.

"(b) That they would have access to the clubhouse; that it would be open for them and their guests; to make it exclusive, cards were issued to the lot owners for the use of themselves and guests.

"(c) That it was to be a 'Country Club' as its name signified, exclusively for the lot owners, their friends and guests.

"(d) That it would maintain the streets, athletic fields, parks, beach, promenades, et cetera. Lot owners paid $4 yearly for this."

The record shows that to this end, each purchaser was given with his land contract a membership certificate in the Bunny Run Country Club in the following form.

"Membership Certificate

"This is to certify that * * * of * * * is a life member of Bunny Run Country Club with all priv-

ileges and rights in the use of the athletic grounds, golf course, park promenades, and lake shore so long as the land contract for lots * * * section * * * of Bunny Run Country Club subdivision are observed.

"(Signed) LAKE HOMES REALTY CO."

And the land contracts as executed between these purchasers and the Lake Homes Realty Company contained the following language:

"The first party [realty company] agrees to furnish right of way to and from the lake to the premises herein described and to furnish docking space for a boat, and to give a permanent interest in the parks and athletic grounds of the said Bunny Run Country Club, according to the certificate of membership hereto attached and which is a part hereof, so long as the restrictions provided herein are maintained."

The present difficulties arise from the fact that most of the recreational facilities in which a permanent interest was thus promised to the exclusive use of purchasers were located on a portion of the Porritt farm known as Elizabeth Park. This park was immediately adjacent to Long Lake and contained a bathing beach, bathhouse, and clubhouse, as well as picnic grounds. After possession of the Porritt farm had been taken from the Lake Homes Realty Company in the 1935 summary proceedings, and after management and operation thereof had been transferred to the Bunny Run Realty Company, the latter put James Palmer in control of the bathhouse, beach, and clubhouse, and the events transpired which have resulted in the instant suit.

It is complained of the defendants that advertisements were inserted in newspapers inviting the public to come and bathe at Bunny Run at a price of 25 cents per person and giving special rates to picnics.

Plaintiffs testified that the public responded in great numbers; that on week ends and holidays, there were such crowds that owners and their friends were crowded out from the beach; that the water became unfit for swimming and the parks strewn with paper and picnic refuse. Plaintiffs also claimed that the concession to operate the clubhouse was sold to Palmer, who operated it for his own profit instead of for the comfort and convenience of lot owners, their families, and guests. A fence was built along the edge of the lake shutting off the bathing beach from the rest of Elizabeth Park, a turnstile installed so that the general public could not have access to the lake without paying therefor. In short, plaintiffs complain that instead of the seclusion, privacy, and exclusive use of the premises which was promised to them, "Bunny Run Country Club became a public park, accessible to any one who had 25 cents to spend."

Plaintiffs file this bill in equity, alleging that the general plan of the Lake Homes Realty Company to maintain these facilities exclusively for lot owners was well known to the vendors of the Porritt farm, and that since the Bunny Run Realty Company has taken possession, it has deprived the plaintiffs of rights and privileges to which they are entitled under their contracts as purchasers from the Lake Homes Realty Company. They ask that the defendants be restrained from continuing the conduct complained of, and that title to Elizabeth Park and the facilities therein be conveyed by the Bunny Run Realty Company to the Bunny Run Protective Association in trust for the use and benefit of all the lot owners, their families and guests.

After hearing in the circuit court a decree was entered dismissing plaintiffs' bill of complaint. Decision was based largely, if not wholly, on the fact

that since the land contract under which the Lake Homes Realty Company purchased the Porritt farm had been terminated by summary proceedings the title held by purchasers of lots in this particular parcel and appurtenant rights were thereby terminated; and more particularly that the purchasers of lots in parcels other than the Porritt farm obtained no contract rights binding upon either the original owners of the farm or the Bunny Run Realty Company to which they subsequently sold the farm. Plaintiffs have appealed.

We think it is too clear to merit lengthy discussion that neither the Bunny Run Protective Association nor any of the plaintiffs who are lot purchasers in parcels other than the Porritt farm ever had any contractual relations or rights which are in any way binding upon the original owners of that farm or upon the present owners. Therefore as to such plaintiffs the decree dismissing the bill of complaint as against the Bunny Run Realty Company and its agent, James Palmer, must be affirmed. And in this connection it may be noted as to defendants other than those just above named, none of plaintiffs are entitled to injunctive or other equitable relief; but instead their relief, if any, since it is sought upon the ground of alleged fraud or breach of contract, must be obtained on the law side of the court.

In view of the above, the only issue remaining for consideration in the instant case is the right to relief, if any, of plaintiffs Kraushaar who are purchasers of lots in the subdivision into which the Porritt farm was divided. These plaintiffs claim that they are entitled to injunctive relief whereby the Bunny Run Realty Company and its agent, James Palmer, will be restrained from opening to the general public the resort facilities of Elizabeth

Park, rather than reserving and protecting the use of such facilities for plaintiffs Kraushaar and other property owners of the Porritt farm subdivision.

Obviously plaintiffs Kraushaar are not entitled to any relief against the Bunny Run Realty Company or its agent on the ground that such plaintiffs hold certificates of membership in the Bunny Run Country Club, which certificates were issued to them by the Lake Homes Realty Company; nor in the instant suit can such plaintiffs obtain relief under the terms of their contracts of purchase of lots from the Lake Homes Realty Company. As above indicated, any title or rights obtained by these plaintiffs from the Lake Homes Realty Company, which was only a contract vendee of the Porritt farm, were subject to the superior title of the vendors of that property; and when that contract was terminated by summary proceedings all rights of these plaintiffs under these contracts vanished.

But it should be noted that the Kraushaars and other lot owners in the various parcels have not been barred from the use of facilities in Elizabeth Park. Instead the Kraushaars and other lot owners who appeared as witnesses at the trial testified that they were given "courtesy cards" which entitled them to the use of the beach without payment of a fee, and that they were permitted to use the other recreational facilities when they so desired. Although many testified that they were dissatisfied and had no desire to use these facilities because of the alleged change resulting from use by the general public, there is no evidence that lot owners in the various parcels were compelled to pay or were barred from the use of such facilities.

The only remaining ground upon which plaintiffs Kraushaar assert right to relief against the Bunny Run Realty Company and its agent is that the ven-

dors in the land contract for the Porritt farm joined with the vendees in the dedication of that plat. This dedication recites that the contract vendees, as proprietors, have caused the land embraced in the plat to be laid out, platted, and known as the Bunny Run Country Club subdivision, "and that drives, roads, boulevards and terraces as shown on plat are hereby dedicated to the use of lot owners of plat and pro· prietors to be maintained by same, excepting Miller Drive and Conklin Drive, which are hereby dedi·· cated to the use of the public." It is admitted that the vendors in the contract for the sale of the Porritt farm joined in the foregoing dedication; and it is for this reason that plaintiffs Kraushaar assert that the Bunny Run Realty Company which was organized by the vendors is also bound by the terms of the dedication. And these particular plaintiffs further claim that because of the expression in the dedication that the "drives, roads, boulevards and terraces as shown on plat are hereby dedicated to the use of lot owners of plat and proprietors" that therefore such plaintiffs are entitled to injunctive relief against the Bunny Run Realty Company and its agent who are promoting the public use of such drives and boulevards incident to the general public use of the other recreational facilities.

We think the contention last above noted cannot be sustained. Solely as individuals, these plaintiffs cannot assert any rights based upon the dedication and acceptance of the plat; but, instead, rights of that character must be asserted, if at all, as a right or use to which the public in general is entitled.

"There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large. There may be a dedica-

tion of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it; and if from the nature of the user it must be confined to a few individuals, * * * the idea of dedication is negatived." 16 Am. Jur. p. 359.

We are of the opinion that the only fair and reasonable construction that can be placed upon the dedication of the drives, roads, and boulevards, laid out in the plat of the Porritt farm, if in fact and in law there was any dedication at all, is that there was a dedication to the general public of the same. It follows that the theory of these plaintiffs on which they seek injunctive relief is not tenable.

We find no merit in appellants' contention that the summary proceeding instituted by the vendors of the Porritt farm was fatally defective because no writ of restitution was actually issued, but instead the defendants in that proceeding voluntarily surrendered possession. Nor was the validity of that proceeding affected by the fact that while it was pending a bill of complaint for moratorium relief was filed, but subsequently dismissed without relief being decreed so far as disclosed by this record. Other questions raised by appellants are without merit.

The decree entered in the circuit court is affirmed, with costs to appellees, Bunny Run Realty Company and James Palmer.

Sharpe, C. J., and Bushnell, Boyles, Chandler, Wiest, and Butzel, JJ., concurred. McAllister, J., took no part in this decision.