## WEST MICHIGAN PARK ASSOCIATION *v.*
## DEPARTMENT OF CONSERVATION.

1. DEDICATION—REVOCATION—ESTOPPEL—VACATION.

   A dedication by the owner-plattor of land to public use becomes irrevocable upon the sale of lots by reference to the plat, estops him to vacate it, except through court proceedings as provided by statute, and binds the grantees of the dedicators (CLS 1961, § 560.62).

2. SAME—CONVEYANCE OF LAND FOR PUBLIC USES IN TRUST.

   Original plat of land, made in 1886, *held*, a sufficient conveyance to vest in the county wherein the land was located the fee of such parcels of land as were therein expressed to be for public

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Dedication §§ 25, 60, 61.
Revocation or withdrawal of dedication by grantees or successors in interest of dedicator. 86 ALR2d 860.
[2] 23 Am Jur 2d, Dedication § 22.
[3, 6] 23 Am Jur 2d, Dedication § 58.
[4] 23 Am Jur 2d, Dedication § 66.
[5] 23 Am Jur 2d, Dedication § 75.
[7] 23 Am Jur 2d, Dedication § 42.
Necessity of acceptance of dedicated street to relieve it from taxation. 5 ALR 1537.
[8] 23 Am Jur 2d, Dedication §§ 43, 44.
Validity and construction of regulations as to subdivision maps or plats. 11 ALR2d 524.
[9, 11, 12] 23 Am Jur 2d, Dedication §§ 43, 44.
[10, 14] 23 Am Jur 2d, Dedication § 49.
Dedication: time for acceptance. 66 ALR 321.
[13] 23 Am Jur 2d, Dedication §§ 41, 60.
[15] 5 Am Jur 2d, Appeal and Error § 820.
[16] 23 Am Jur 2d, Dedication § 23.
[17] 23 Am Jur 2d, Dedication § 4.
[18] 23 Am Jur 2d, Dedication § 41.
[19] 23 Am Jur 2d, Dedication § 24.
[20] 23 Am Jur 2d, Dedication § 44.
[21] 23 Am Jur 2d, Dedication § 65.
[22] 23 Am Jur 2d, Dedication § 69.
[23] 5 Am Jur 2d, Appeal and Error § 1009.

uses, in trust to and for the uses and purposes therein expressed, and for no other use or purposes whatever, where statute then in force provided that the due making, acknowledgment, and recording of a plat should be deemed a sufficient conveyance to vest in the county in which the land lies the fee of parcels of land expressed for public uses, in trust (PA 1839, No 91; § 2, as last amended by PA 1885, No 111).

3. Same—Plat as Conveyance—Base Fee.
   The term *base fee*, as used with reference to description of estate in land dedicated to public uses conveyed to the county by plat, was used in the sense of a fee which has a qualification annexed to it (PA 1839, No 91, § 2, as last amended by PA 1885, No 111).

4. Same—Park Areas—Abandonment.
   Plaintiff association, whose members are lot owners of subdivision used for summer resort purposes, and who have used the areas dedicated to public use and designated as park areas may not be said to have abandoned the areas so dedicated, where the use of them has been continuous.

5. Same—Abandonment—Burden of Proof.
   The burden of proving abandonment of land dedicated by owner-plattor to public uses is upon the party asserting abandonment.

6. Same—Park—Base Fee in County.
   The dedication by the owner-plattor of lands in a subdivision for park purposes effected a transfer from the dedicator to the county in which the land was situated a base fee title, the qualifications attaching to the dedication being for park purposes (PA 1839, No 91, § 2, as last amended by PA 1885, No 111).

7. Same—Acceptance—Taxation—Maintenance—Repair.
   Acceptance of an offer to dedicate land to public use is ordinarily essential to a complete dedication, and to work an exemption of the dedicated property from taxation, especially where the public body is to be charged with the duty to maintain and repair the facility offered to the public, and subjected to liability for nonperformance of such duty.

8. Same—Plats—Offer to Dedicate—Acceptance.
   A plat of land is generally taken as a mere offer to dedicate the areas indicated for public use which must be accepted before the dedication is complete.

9. SAME—OFFER TO DEDICATE—ACCEPTANCE.

> An offer to dedicate land as contained in a plat may be accepted either by public authorities or by the public.

10. SAME—OFFER TO DEDICATE—ACCEPTANCE.

> The right to accept land offered in a plat to public use will ordinarily continue until the wants and convenience of the public require the use of the land, or until the offer is withdrawn or revoked.

11. SAME—ACCEPTANCE.

> A dedication of land for the public use, being merely an appropriation of land for such purpose, may be accepted by a formal acceptance for such use by or in behalf of the public.

12. SAME—ACCEPTANCE BY PUBLIC.

> Determination by trial judge that land within a plat dedicated to public use for park purposes had been used by the public for such purpose for upwards of 65 years qualified as an acceptance by the public of the dedication.

13. SAME—ACCEPTANCE BY GRANTEES OF THE DEDICATOR.

> An acceptance of a dedication of park areas by the grantees of the dedicators made the original dedication irrevocable.

14. SAME—DURATION OF OFFER—STATUTE OF LIMITATIONS.

> An unaccepted offer of land for public uses, unless there are facts equivalent to a continuous renewal of the offer, cannot be considered open after the lapse of time enough to bar all actions for the recovery of lands under the statute of limitations.

15. APPEAL AND ERROR—QUESTIONS FOR TRIER OF FACTS—PREPONDERANCE OF EVIDENCE.

> The Court of Appeals does not substitute its judgment on questions of fact for that of the trial court in a nonjury case, unless the evidence presented clearly preponderates in the opposite direction.

16. DEDICATION—ACCEPTANCE—PUBLIC IN GENERAL.

> Rights based upon dedication and acceptance of a plat are assertable, if at all, as a right or use to which public in general is entitled.

17. SAME—PUBLIC RIGHTS.

> The essence of a dedication to public uses is that it shall be for the use of the public at large and while there may be a dedication of lands for special uses, it must be for the benefit of the public and not for any particular part of it.

18. SAME—ACCEPTANCE—PARK AREA.

Finding of trial judge that area adjacent to State park which area was within summer resort subdivision and had been dedicated to public use for park purposes was owned by county in trust for the public *held,* not error under record presented in action to enjoin State and county officers from using such park area and to declare that plaintiff lot owners have exclusive right to use thereof, since there had been acceptance of the dedication through user thereof (PA 1839, No 91, § 2, as last amended by PA 1885, No 111).

19. ACKNOWLEDGMENT—PLATS—CURING OF TECHNICAL DEFICIENCY.

Holding by trial court that technical deficiency in acknowledgment of plat had been cured by statutory provision validating recorded plats that had not been acknowledged in accordance with statute and that plat was valid *held,* not error, where dedicator and its grantees had asserted the legality of the plat from time to time in the past (CL 1948, § 560.69).

20. OFFICERS—AUDITOR GENERAL—DEPUTY—ABSENCE—APPROVAL OF PLAT.

A plat which was recorded in 1886 is not declared invalid nearly 80 years later merely because the deputy auditor general, rather than the auditor general himself, approved the plat, since the acceptance by the deputy may well have been done in the absence of the auditor general himself (How Stat, § 283).

21. DEDICATION—PARK PURPOSES—LEASE BY COUNTY TO STATE.

Defendant county in which summer resort subdivision was located and in which plat dedicating certain areas for public use tor park purposes had effected a base fee title in county was empowered to lease such dedicated area to the State department of conservation for purposes within the dedication so limited (CL 1948, § 318.7).

22. SAME—PUBLIC AND LOT OWNERS IN SUMMER RESORT SUBDIVISION—JURISDICTION.

Retention of jurisdiction in circuit court *held,* ample to preserve and protect rights of lot owners of summer resort subdivision and the general public in portions of plat dedicated by owner-plattor for park purposes and thereafter leased by county to to State department of conservation.

23. COSTS—DEDICATION—PARKS.

No costs are allowed in action to enjoin defendant county and State officers from using and possessing certain areas in summer resort subdivision which had been dedicated to the public for park purposes, a public question being involved.

Appeal from Ottawa; Smith (Raymond L.), J. Submitted Division 3 October 7, 1965, at Grand Rapids. (Docket No. 261.) Decided February 9, 1966. Leave to appeal denied by Supreme Court May 11, 1966. See 377 Mich 709.

Bill by West Michigan Park Association of Ottawa Beach, Michigan, a Michigan corporation, and others against the Department of Conservation, State of Michigan; the County of Ottawa; and the Ottawa County Road Commission to enjoin defendants from using, controlling, and possessing certain park land in area known as Plat of West Michigan Park, and to declare that plaintiffs have exclusive right to possession and use of the park land. Judgment for defendants. Plaintiffs appeal. Affirmed.

*McShane, Bowie & Anderson (T. Gerald McShane,* of counsel), for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Nicholas V. Olds.* and *Warren R. Snyder,* Assistant Attorneys General, for defendants.

*Amicus Curiae:*

*Edward D. Wells, in propria persona.*

Holbrook, J. Plaintiffs-appellants, members of West Michigan Park Association of Ottawa Beach, Michigan, and lot owners in what is known as Plat of West Michigan Park, brought suit on March 31, 1958, against the defendants-appellees, the department of conservation of the State of Michigan, county of Ottawa, and Ottawa county road commission, for an injunction restraining them from using, controlling, and possessing so-called "park" land in

said plat, and for decree that plaintiffs have exclusive rights to possession and enjoyment of said "park" areas to the exclusion of the general public.

The able trial judge, after hearing the cause, determined that the county of Ottawa held title in fee to the "park" areas and open areas designated in said plat subject to the perpetual right of the lot owners to use, occupy, and enjoy the same with the general public.   Judgment was entered in accord therewith.   Plaintiffs appeal.

The pertinent facts appear in the opinion of the trial judge as follows:

"On September 21, 1886, the West Michigan Park Association, incorporated as a summer resort association under PA 1869, No 151,[1] recorded in the office of the register of deeds for Ottawa county its plat of West Michigan Park.   This plat was marked 'Map of West Michigan Park' and contained a number of areas designated as 'park, walks, roads' as well as open areas.   Eventually a large number of lots were sold to the public by reference to this plat.

"The legal standing of this plat has been before the Michigan Supreme Court on three occasions: *West Michigan Park Association* v. *Pere Marquette R. Co.,* 172 Mich 179; *Westveer* v. *Ainsworth,* 279 Mich 580; *Kirchen* v. *Remenga,* 291 Mich 94.

"In *Kirchen* the Supreme Court held that the lot owners had the legal right under the plat to maintain the areas designated 'park' as such.   In the matter before this court the issue is whether or not the designated 'park' areas and other open areas treated by all parties concerned as park areas are public to the extent that the general public may not be excluded from their use.

"For many years there was a large resort hotel located on a 'park' area and the general public was invited to use the facilities of the resort and to make

---

[1] See repealer and saving clause in CL 1948, § 455.22 (Stat Ann 1963 Rev § 21.681).

use of the 'park' and open areas for recreational purposes. From 1954 to 1958 the public was excluded from using these lands by the erection of fences and the posting of signs. In 1958 the fences were removed by public authorities.

"Defendant maintains a public park called Holland State Park, comprising 43 acres of land on Lake Michigan and located south and west of West Michigan Park and contiguous to it. Holland State Park draws in excess of 1,000,000 attendance each year.

"In 1958 defendant conservation department and Ottawa county entered into a lease wherein the county leased certain areas originally designated 'park' areas or open areas in the West Michigan Park plat above referred to and now known as park areas 3, 7, 8, and 12 of Nieuwsma's Supervisor's Resubdivision of West Michigan Park. In this lease Ottawa county was designated as the owner of the fee. The lease contained limitations as to use so as to secure the rights of all concerned within the purposes of the original West Michigan Park plat. * * *

"The record sustains a finding that the public have for many years, from 1886 to 1954, used the beach and park areas, especially the beach areas between West Michigan Park and Lake Michigan and the area to the north of Holland State Park, now referred to as the Thompson property, and Mt. Pisgah Park for recreational purposes. Be that as it may this court finds a statutory dedication present. The record likewise sustains a finding that there were public moneys spent to maintain walks and fire lanes in the plat.

"The above mentioned lease was entered into pursuant to PA 1919, No 218, § 7, as amended. This act authorized a municipality to transfer the care and control of open spaces to the conservation department. The lease contains ample provision to insure that the rights of the lot owners are maintained and the original purposes of the dedication are carried out."

We have two questions raised that must be re-
solved in this appeal: (1) Did the plat of 1886 of
West Michigan Park effect a dedication to the public
of the areas on the plat marked "park"? (2) Did
Ottawa county own or control the areas on the plat
map marked "park" and the "Thompson area" so
as to render PA 1919, No 218, § 7 (CL 1948, § 318.7
[Stat Ann 1958 Rev § 13.1015]) applicable and
thereby allow the transfer of said areas to the de-
partment of conservation?

In *Westveer* v. *Ainsworth, supra*, Mr. Chief Justice
FEAD on pp 583, 584 stated as follows:

"It is the great weight of authority that dedication
by the owner-plattor becomes irrevocable upon sale
of lots by reference to the plat and he is estopped to
vacate it. 18 CJ Dedication, p 119; 8 RCL, p 914;
Ann Cas 1917A, 1109, note. *And the grantees of
the dedicators are bound by the dedication.* 18 CJ
Dedication, p 115.  *  *  *

"We need not attempt to define precisely the sort
of title the lot purchaser has in the public grounds
nor discuss the matter of vacation at common law,
because when the instant plat of 1886 was recorded,
as now, the statutes provided for change therein by
the court unless there be 'reasonable objection to
making such alteration or vacation.' How Stat,
§ 1478 *et seq.;* CL 1929, § 13259.[2] While such pro-
ceedings may constitute an attempt at revocation of
the dedication, 18 CJ Dedication, p 123, grantees of
the original plattor are not estopped to take them.
*In re Oakes,* 249 Mich 494. And the statutes them-
selves name the persons who may make application.*
The plat must be deemed to have been recorded sub-
ject to the statutory conditions and plaintiffs are not
estopped from pursuing the procedure. *The estoppel*

---

[2] See, currently, CLS 1961, § 560.62 (Stat Ann 1963 Cum Supp
§ 26.492).

*runs only to their denying the dedication as against the lot purchasers."* (Emphasis supplied.)

"* See CL 1929, § 13256 *et seq.*"

The dedication by the owner-plattor as to this plat became irrevocable subject only to be changed by the Court as provided by statute.

In *Kirchen* v. *Remenga, supra,* plaintiff's herein or their predecessors in title brought action against defendants therein who claimed rights to dedicated public lands in said plat to the exclusion of plaintiffs and the general public. Mr. Justice POTTER stated on pp 111–113 as follows:

"The territorial act of March 12, 1821, governing town plats, provided that when made, acknowledged, and recorded in accordance with the statute, they 'shall be deemed a sufficient conveyance, to *vest the fee* of such parcels of land as are therein expressed, named, or intended to be for public uses, in the county in which such town lies, *in trust* to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever.' 1 Terr Laws, p 816. The same language was continued in section 2 of the act of April 12, 1827 (2 Terr Laws, p 577). This language was continued in PA 1839, No 91, § 2, as originally enacted and as amended by PA 1859, No 35, and PA 1885, No 111. By PA 1887, No 309, amending such section, it was provided:

" 'The map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be therein designated for public uses in the city or village within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever.'"

"This rule was continued by CL 1929, § 13247 (Stat Ann § 26.480).[3]

"The original plat here involved was made and filed while PA 1885, No 111, was in force, and must be deemed as sufficient conveyance to vest the fee of such parcels of land as were therein expressed, named, or intended to be for public uses, in the county of Ottawa, in trust to and for the uses and purposes therein named, expressed, or intended, and for no other use or purpose whatever.

" 'The statute in question provides in express terms that the plat shall have the effect to convey the fee of land dedicated to public uses to the county. A plat conforming to the statute, then, operates as a conveyance of a fee, though *probably* it is a base fee;' and there were 'sufficient reasons for a statute which should give to a formal offer of dedication of public ground by a plat the effect of *a conveyance by way of grant to uses, and providing a grantee.' Patrick* v. *Young Men's Christian Ass'n of Kalamazoo,* 120 Mich 185.

"The term 'base fee,' which the court in the case last cited said was probably meant by the statute, was used in the sense of a fee which has a qualification annexed to it.   1 Bouvier's Law Dictionary (Rawle's 3d Rev), p 329.   This is apparent from the later language above quoted.   *   *   *

"Defendants contend plaintiffs have abandoned whatever rights they may have had in the premises dedicated for park purposes, and that defendants have acquired rights therein by adverse possession. It does not appear plaintiffs and their grantors ever ceased to use the park lands for the purposes for which they were dedicated. *Plaintiffs do not claim exclusive rights to the use and possession of the park lands, but only claim they are entitled to use them in common with others in the same manner in which parks are generally used.* Such use by plaintiffs and by their grantors has been continu-

---

[3] See, currently, CL 1948, § 560.50 (Stat Ann 1953 Rev § 26.480).

ous, and it cannot be said that abandonment has taken place. The burden of proving abandonment is upon the party asserting it, and abandonment occurs only when the use for which the property is dedicated wholly fails. *Delaware, L. & W. R. Co.* v. *City of Syracuse* (ND NY), 157 F 700; *Sipe* v. *Alley,* 117 Va 819 (86 SE 122); *Horey* v. *Village of Haverstraw,* 124 NY 273 (26 NE 532); 18 CJ Dedication, p 123; *Sinclair* v. *Comstock,* Harr Ch (Mich) 404. Plaintiffs contend, and we hold, such use of the park lands as has been made does not amount to an abandonment." (Emphasis supplied in part.)

It is apparent from the ruling in the *Kirchen Case,* plaintiffs therein, who are now plaintiffs in this case or their predecessors in title, did not claim exclusive rights in the said "park" lands of said plat, but only the right to use the same with the general public.

It appears settled law that the 1886 plat effected a transfer of the fee from the dedicator to the county of Ottawa which was a "base" fee. The qualifications attaching to the dedication of the lands in question was for "park" purposes. The question arises as to acceptance of the dedication.

In 23 Am Jur 2d, Dedication, §§ 42, 43, 45, 49, and 50, pp 38–40 and 43–45, it is stated in part:

"Unless otherwise provided by statute, acceptance of an offer to dedicate land to public use is ordinarily essential to a complete dedication and to work an exemption of the dedicated property from taxation, especially where the public body is to be charged with the duty to maintain and repair the facility offered to the public, and subjected to liability for nonperformance of such duty. * * *

"In the case of dedication by plat the matter of acceptance is peculiarly apt to be overlooked by reason of the ready implication of acceptance, and sometimes acceptance almost seems to be implied as a

matter of course.  \* \* \*  Generally, however, the plat is taken as a mere offer to dedicate, which must be accepted before the dedication is complete. \* \* \* Although the owner, by platting land and conveying lots with reference to the plat, is, as a general rule, estopped to deny the dedication of the parts of the tract marked on the plat as streets, alleys, parks, or other public places, as against his grantees, or may even be estopped to revoke or deny such dedication as against the public, it does not necessarily follow that the dedication is accepted by the municipality.  \* \* \*

"In the absence of statute, an offer to dedicate land to public use is not required to be accepted by public authorities; *it may be accepted by the general public.*  \* \* \*

"Unless a statute provides to the contrary, the right to accept land offered to public use as a street will ordinarily continue until the wants and convenience of the public require the use of the street or, as is said in some cases, until the offer is withdrawn or revoked.  \* \* \*

"Formal acceptance may consist of a formal ratification by the proper official board of the municipality, a formal resolution or order by any other proper official body, the adoption of a municipal ordinance, the vote of a town council, *the signing of a written instrument by the proper authorities,* the execution of an official map by a city showing the street offered to be dedicated as such, or an act of the legislature incorporating a town, or adopting a map showing its limits."  (Emphasis supplied.)

The case of *Clark* v. *City of Grand Rapids* (1952), 334 Mich 646, casts light upon the manner in which a dedication of public property may be accepted. Mr. Justice BUTZEL on pp 656, 657, stated as follows:

"A dedication is merely an appropriation of land to some public use, accepted for such use by or in behalf of the public. *Hayes* v. *Livingston,* 34 Mich

384 (22 Am Rep 533); *Alton* v. *Meeuwenberg,* 108 Mich 629."

The trial judge in his finding of facts determined that the park lands in question had been used by the public for many years from 1886 to 1954. This would qualify as an acceptance *by* the public and permissible under *Clark* v. *City of Grand Rapids, supra.*

The dedication of the "park" areas had already been accepted by the grantees of the dedicator, as evidenced by the decision in the *Westveer Case,* thus making the original dedication irrevocable. The early case of *County of Wayne* v. *Miller* (1875), 31 Mich 447, enunciates the general rule concerning acceptance of a dedication by a municipal authority. It is stated by Mr. Justice COOLEY on p 450 as follows:

"After what length of time such an offer must be regarded as withdrawn, circumstances may perhaps determine, but unless there were facts equivalent to a continuous renewal of the offer, it cannot be considered open after the lapse of a period of time sufficient to bar all actions for the recovery of lands under the statute of limitations."

See, also, *Shewchuck* v. *City of Cheboygan* (1963), 372 Mich 110.

Our case is distinguishable from both *Shewchuck* and *Miller.* In our case we have lot owners or grantees from the dedicator asserting rights in and to the "park" areas and also acceptance of the "parks" by the general public by user for a period of more than 65 years. These facts have been determined in the previous cases involving this plat and from the fact findings, made by the able trial judge, in our case. This Court does not substitute its judgment on questions of fact in a nonjury case,

unless the evidence presented clearly preponderates in the opposite direction.

The question arises: Do plaintiffs have exclusive right to possession and enjoyment of the "park" areas as delineated in the 1886 plat? As authority for the principle that there cannot be a dedication for private purposes or enjoyment, we turn to *Krausharr* v. *Bunny Run Realty Co.* (1941), 298 Mich 233, wherein Mr. Justice NORTH stated on pp 241, 242 as follows:

"Solely as individuals, these plaintiffs cannot assert any rights based upon the dedication and acceptance of the plat; but, instead, rights of that character *must be asserted, if at all, as a right or use to which the public in general is entitled.*

" 'There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large. There may be a dedication of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it; and if from the nature of the user it must be confined to a few individuals, * * * the idea of dedication is negatived.' 16 Am Jur, p 359." (Emphasis supplied.)

We conclude that the dedication of the "park" areas in the 1886 plat under the statute effected a grant of the fee to the county of Ottawa in trust for the public. That this offer remained open under the circumstances of this case; *i.e.,* by reason of the acceptance of the dedication by the grantees of the dedicator, and their use of the lands thereunder together with acceptance by the general public through user. We find no error in the trial judge's ruling that the so-called "Thompson property" was a part of the park areas as dedicated.

Plaintiffs claimed that the original West Michigan Park plat was ineffectual because of certain technical deficiencies, claiming the acknowledgment was made in Kent county instead of Ottawa county and that the plat was accepted by the deputy auditor general instead of the auditor general. The trial judge ruled that the claimed acknowledgment deficiency was cured by CL 1948, § 560.69 (Stat Ann 1953 Rev § 26.499) and that the acceptance by the deputy auditor may well have been done in the absence of the auditor general[4] under the *facts* of this case. We agree and further add that the legality of the plat has been asserted by the dedicator and its grantees from time to time in the past. The trial judge did not err in ruling the plat valid.

A similar lease from a municipal authority to the department of conservation of the State of Michigan has already been approved as proper under CL 1948, § 318.7 (Stat Ann 1958 Rev § 13.1015). *Clark v. City of Grand Rapids, supra.*

The judgment of the circuit court amply provided for protection of plaintiffs' rights in and to said public lands by retaining jurisdiction of the matter to preserve and protect the rights of plaintiffs and the general public in said lands.

Judgment affirmed, no costs, a public question being involved.

BURNS, P. J., and T. G. KAVANAGH, J., concurred.

---

[4] See How Stat, § 283 (CL 1948, § 13.26 [Stat Ann 1961 Rev § 3.130]).