MARTIN v REDMOND

Docket No. 222960. Submitted May 9, 2001, at Detroit. Decided October
   26, 2001, at 9:10 A.M. Leave to appeal sought.

   Robert and Cathy Martin brought an action in the Oakland Circuit
   Court against John R. and Barbara E. Redmond, David A. and Lisa
   A. Beldean, and others who own property in the same subdivision
   as the plaintiffs, seeking to have a provision in the subdivision plat
   that provides that "Outlot A is reserved for the use of the lot own-
   ers" removed or declared null and void with regard to the portion
   of Outlot A that the plaintiffs own. The plaintiffs claimed that the
   restriction on the use of Outlot A expired according to the restric-
   tions for the plat. The defendants alleged there was a valid dedica-
   tion for the use of all the subdivision lot owners. The court, Alice
   L. Gilbert, J., granted summary disposition in favor of the plaintiffs.
   The Redmonds and four other defendants appealed and the plain-
   tiffs cross appealed.

   The Court of Appeals held:

   1. The plaintiffs own the disputed property as a matter of law
   and the plat documents do not convey title of the disputed prop-
   erty by statutory dedication to the defendants or other owners of
   lots in the subdivision.

   2. The Land Division Act, previously the Subdivision Control Act,
   clearly refers to an appropriation of land for public use as a "dedi-
   cation." There cannot be a dedication for private purposes or
   enjoyment.

   3. A valid dedication of land for a public purpose requires two
   elements: a recorded plat designating the land for public use, indi-
   cating a clear intent by the plat proprietor to dedicate the land to
   public use, and acceptance by the proper public authority. The
   defendants did not present evidence of either element to support
   their claim of statutory dedication.

   4. The language at issue indicates an intent to create a private,
   contractual right of use or an implied or restrictive covenant,
   reserving the use of Outlot A to subdivision lot owners. The restric-
   tions document provides a twenty-five-year duration for all restric-
   tions. The restriction expired in November 1994.

   Affirmed.

1. DEDICATION — PUBLIC USE.

    A "dedication" for purposes of the Land Division Act, previously the Subdivision Control Act, refers to an appropriation of land for public use; there cannot be a dedication for private purposes or enjoyment (MCL 560.101 *et seq.*).

2. DEDICATION — PUBLIC USE — ELEMENTS OF DEDICATION.

    A property owner's intent to dedicate land to the public must be unequivocal; a valid dedication of land for a public purpose requires a recorded plat designating the land for public use, indicating a clear intent by the plat proprietor to dedicate the land for public use, and timely acceptance by the proper public authority through a manifest act either formally confirming or accepting the dedication or by exercising authority over the land.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the plaintiffs.

UAW-GM Legal Services Plan (by *Christine A. Waid*), for the defendants.

Before: DOCTOROFF, P.J. and SAAD and WILDER, JJ.

SAAD, J. Defendants appeal as of right, and plaintiffs cross appeal, from the trial court's order granting summary disposition to plaintiffs in this residential property dispute. We affirm.

### I. FACTS AND PROCEEDINGS

Most of the essential facts in this case are not in dispute. In November 1969, Jarl Corporation, developers of the Tan Lake Shores Subdivision in Oxford Township, recorded a plat for the subdivision. The plat documents contain a dedication of the subdivision streets to the public, a designation of easements, and a specification that "Outlot A is reserved for the use of the lot owners . . . ." According to the parties, Outlot A originally consisted of two lots abutting Tan Lake and located at the end of a cul-de-sac on Brook-

field Road.[1] The ownership of one of the Outlot A lots is at the center of this dispute.

At the time the developers filed the plat, they also recorded certain restrictions for the subdivision, including one restriction at issue on appeal:

> 17. All the restrictions, conditions, covenants, charges, easements, agreements and rights herein contained shall continue for a period of twenty-five years from date of recording this instrument.

Officers of the Jarl Corporation signed the dedication and restrictions, as did other lot owners, including James Fritch, whom the parties do not dispute owned both the disputed part of Outlot A and the adjacent lot, lot 21, when the plat was filed. Thereafter, James Fritch sold lot 21 and the disputed part of Outlot A together, as did prior and subsequent sellers. Plaintiffs purchased the property from Anthony and Lori Pasko in October 1996 and their deed reflects their ownership of both lot 21 and "part of Outlot A," the size and location of which is also set forth in their deed.[2]

---

[1] According to the parties, all properties in the subdivision have access to Tan Lake, either directly or through a canal.

[2] The Paskos bought lot 21 and part of Outlot A by warranty deed from Gerald and Amelia Kelly on September 1, 1987. The Paskos' deed contains the same property description set forth in plaintiffs' deed and both Anthony and Lori Pasko testified in an affidavit that they maintained the disputed property, paid taxes and liability insurance for it, and posted "no trespassing" signs on it during their ownership.

The same description of lot 21 and part of Outlot A appears on prior warranty deeds executed in October 1983 from Donald and Sandra Brouhard to the Kellys, and from Harmon and Illa Fritch to the Brouhards. Harmon and Illa Fritch were the first purchasers of the property after it was platted. They acquired their quitclaim deed from James Fritch (the owner at the time of the platting) and his wife, Dianne Fritch, on January 8, 1976. The deed did not refer to Outlot A, but contained a description of "Parcel Two," with essentially the same description of Outlot A as in the

Plaintiffs filed this action on July 22, 1998, as the current owners of lot 21 and part of Outlot A, seeking to have the "Outlot A is reserved for the use of the lot owners" specification removed, or declared null and void, for that portion of Outlot A that they own. According to plaintiffs, they learned about the language in the plat when they applied for a permit to build a home on lot 21 and their portion of Outlot A. The thirty-seven defendants in this case are other lot owners in the subdivision, only six of whom have appealed. Defendants claim that the reservation of Outlot A constitutes a valid dedication of the lot for the use of other lot owners in the subdivision as a place from which to launch boats and swim.

On February 4, 1999, plaintiffs filed a motion for summary disposition under MCR 2.116(C)(10). Relying on ¶ 17 of the restrictions for the subdivision plat, plaintiffs argued that the restriction on the use of Outlot A expired because twenty-five years had elapsed since the 1969 platting of the subdivision. Thereafter, plaintiffs filed another motion and argued that the doctrines of laches and estoppel bar defendants' claims to the use or ownership of plaintiffs' portion of Outlot A. Plaintiffs further asserted that they lawfully own the property because the plat does not contain a valid public dedication.

Several defendants responded to the summary disposition motions and argued that the twenty-five-year limitation did not apply to the 1969 dedication of Outlot A. The defendants who ultimately appealed the trial court's ruling filed a separate motion for summary disposition on March 23, 1999, arguing that Out-

subsequent deeds. Harmon and Illa Fritch purchased lot 21 and "Parcel Two" in 1966 and sold it to James and Dianne Fritch in 1968.

lot A was validly dedicated to the lot owners in the subdivision plat, that the restrictions did not apply to Outlot A because it was dedicated before the restrictions were filed, and that plaintiffs could not establish ownership of part of Outlot A through adverse possession.[3]

On September 24, 1999, the trial court entered an order granting summary disposition to plaintiffs on the basis of laches and estoppel. On October 11, 1999, the court entered another order describing plaintiffs' exclusive right to the disputed portion of Outlot A.

## II. ANALYSIS

We review a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).[4]

---

[3] In a later reply brief, plaintiffs denied that they are asserting a claim of adverse possession and, therefore, we will not address this issue.

[4] A motion under MCR 2.116(C)(10) tests the factual support for a claim. *Spiek, supra* at 337. If the proffered evidence does not establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Plaintiffs did not file this action specifically seeking to quiet title to the disputed portion of Outlot A, as provided by MCR 3.411 and MCL 600.2932, but only to remove restrictions or reservations from their claimed property. However, plaintiffs raised title questions in their complaint and the case evolved into one that, substantively, would determine property rights akin to an action to quiet title for all named defendants. In an action to quiet title, the plaintiff must make out a prima facie case of title. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). The property interest may be legal or equitable. *Id.* The defendants then have the burden of proving superior right or title. *Id.* Because it is an equitable action, a court "looks at the whole situation and grants or withholds relief as good conscience dictates." *Republic Bank v Modular One LLC*, 232 Mich App 444, 451; 591 NW2d 335 (1998) (citations and internal quotations omitted). This Court reviews equitable issues de novo. *Hoagland, supra* at 550; *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 9; 596 NW2d 620 (1999).

The central issue in this case involves the legal ownership of the one-third portion of Outlot A. Plaintiffs assert that they own the parcel through a valid deed and that defendants claim ownership by statutory dedication under MCL 560.253 of the Land Division Act, previously known as the Subdivision Control Act, MCL 560.101 *et seq.* Though the trial court did not expressly decide that issue, the parties raised it below and we must address it for a proper resolution of this appeal.[5] *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994).

We conclude that the trial court properly granted summary disposition to plaintiffs; however, we affirm for reasons other than those articulated by the trial court.[6] Rather than rest our decision on equitable principles alone, we find that plaintiffs own the disputed portion of Outlot A as a matter of law and that the plat documents do not convey title of the disputed property by statutory dedication to defendants or other owners of lots within the subdivision.

Plaintiffs established evidentiary support for their claim of title to the disputed portion of Outlot A by showing the chain of title that began before the recording of the plat dedication in 1969. To counter that evidence, defendants relied on subsections 253(1) and (2) of the Land Division Act, previously

[5] In fact, defendants limit their claims on appeal to the validity of the dedication and the applicability of the recorded subdivision restrictions. Defendants' claim that the trial court erred in granting summary disposition on the basis of the doctrines of laches and estoppel is not properly before this Court because defendants failed to raise it in their statement of questions presented. *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995); MCR 7.212(C)(5).

[6] This Court will not disturb a trial court's ruling to grant summary disposition that reaches the correct result for a different reason. *Howe v Detroit Free Press, Inc*, 219 Mich App 150, 158; 555 NW2d 738 (1996).

known as the Subdivision Control Act, MCL 560.101 *et seq.*:

> (1) When a plat is certified, signed, acknowledged and recorded as prescribed in this act, *every dedication, gift or grant to the public or any person, society or corporation marked or noted as such* on the plat shall be deemed sufficient conveyance to vest the fee simple of all parcels of land so marked and noted, and shall be considered a general warranty against the donors, their heirs and assigns to the donees for their use for the purposes therein expressed and no other.
>
> (2) The land intended for the streets, alleys, commons, parks or other public uses as designated on the plat shall be held by the municipality in which the plat is situated in trust to and for such uses and purposes. [MCL 560.253 (emphasis added).]

Defendants suggest that we construe subsection 253(1) to permit a "dedication" to private individuals. However, a thorough review of the case law convinces us that, before and after the platting and subdivision statutes were enacted, "dedication" clearly referred to an appropriation of land for *public use. Attorney General ex rel Dep't of Natural Resources v Cheboygan Co Bd of Co Rd Comm'rs*, 217 Mich App 83, 88; 550 NW2d 821 (1996); see also *Patrick v Young Men's Christian Ass'n of Kalamazoo*,[7] 120 Mich 185, 191; 79 NW 208 (1899).

---

[7] In *Patrick*, our Supreme Court addressed the validity of a "private dedication" and opined:

> [B]y the language of the act this provision applies only to "public ground." Public ground, in the ordinary sense, is ground in which the general public has a common use; and it would not accord with the common understanding of the language used to say that land devoted to the use of a local religious society, or hospital, or academy, created for church, hospital, or academic purposes, is public ground, even if the use be considered, in a sense, public; and, in

First, our case law clearly states that, to accomplish a dedication, the property owner's intent to dedicate the land to the public must be unequivocal. *Kraus v Dep't of Commerce*, 451 Mich 420, 424; 547 NW2d 870 (1996). To that end, "a valid dedication of land for a public purpose requires two elements: a recorded plat designating the areas for public use, *evidencing a clear intent by the plat proprietor to dedicate those areas to public use*, and acceptance by the proper public authority." *Id.* Acceptance by the public authority must be timely, and it "must be disclosed through a manifest act by the public authority 'either formally confirming or accepting the dedication, and ordering the opening of such street, or by exercising authority over it, in some of the ordinary ways of improvement or regulation.' " *Id.*, quoting *Tillman v People*, 12 Mich 401, 405 (1864).

Defendants have not presented evidence of either element to support their statutory dedication claim. The statement, "Outlot A is reserved for the use of the lot owners" does not show a clear intent by the property owner to dedicate the lot to the "public." The declaration specifies that the property is for the use of lot owners. Thus, were we to read the term "reserved" in the plat as a "dedication," no evidence shows that the grantors intended Outlot A to be used by the general public rather than a specified class of persons. Further, the plat contains other language

the absence of a clear intention to include such, the statute ought not to be so construed. Again, the statute itself contains internal evidences that dedications for such purposes were not designed to be within its meaning, for it illustrates the class of public uses to which it alludes, viz., "streets, alleys, commons, or other public uses," and thus, under the settled rule of *ejusdem generis*, its effect was restricted to public uses of a similar nature. See End Interp Stat 405 *et seq*. [*Patrick, supra* at 191-192.]

specifically stating "that the streets as shown on said plat are hereby dedicated to the use of the public . . . ." This language clearly shows that, had the developer intended to establish a valid dedication of Outlot A for public use, it could have easily done so. Finally, any intent to dedicate the disputed portion of Outlot A to the public or to other lot owners was negated by the original owner's subsequent, inconsistent act of privately selling the disputed property.

Moreover, defendants have not presented any evidence of acceptance of the "dedication" by Oxford Township. Defendants have not shown a formal resolution accepting Outlot A, nor have they shown that the township controlled, improved, or used public funds to maintain the lot. See *Marx v Dep't of Commerce*, 220 Mich App 66, 77; 558 NW2d 460 (1996). To the contrary, evidence presented clearly indicates that the township continued to assess taxes on all of Outlot A as private property; the Department of Natural Resources acquired title to the undisputed two-thirds portion of the outlot for the nonpayment of taxes while private owners in the chain of title to the disputed property, including plaintiffs, paid property taxes on the portion they owned. Further, defendants have failed to show that members of the public made any use of the lot that would remotely evidence the township's or the public's acceptance of the property.

Apparently acknowledging that no "public dedication" occurred, defendants contend that the statute also applies to "private dedications," which, they argue, occurred here as a result of the plat language and because owners of other lots in the subdivision

showed their acceptance of the dedication by using the property.[8]

Before the Plat Act, 1929 PA 172, was revised by the Subdivision Control Act,[9] the applicable statute addressed public entities only. See 1954 PA 186, MCL 560.12 (repealed). Our courts held "dedication" to mean an appropriation of land for public use, and statutory dedication was not extended to encompass uses outside the general public. See *Patrick, supra* at 191-192. Though the Legislature expanded the scope of permitted conveyances in the 1967 revisions,[10] we construe the term "dedication" in accordance with its meaning set forth in our well-established case law.

Our Supreme Court specifically stated in *Kraushaar v Bunny Run Realty Co*, 298 Mich 233, 241-242; 298 NW 514 (1941):

> Solely as individuals these plaintiffs cannot assert any rights based upon the dedication and acceptance of the plat; but, instead, rights of that character must be asserted, if at all, as a right or use *to which the public in general is entitled.*
>
> "There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large.

---

[8] Defendants submitted the affidavit of Samuel Brandt in which he states that, since 1988, lot owners used "the outlot" for swimming and launching boats. However, evidence indicates that Brandt testified during his deposition that he never saw anyone launch boats from the disputed portion of Outlot A. Defendants present no further evidence that lot owners use the outlot and no evidence that lot owners use the *disputed portion* of the outlot, consisting of only one-third of the total lot. Thus, though we do not decide this case on this basis, defendants' claim that other lot owners "accepted" the "private dedication" of the disputed property through use, is not supported by the record.

[9] 1967 PA 288.

[10] MCL 560.253(1).

> There may be a dedication of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it; and if from the nature of the user it must be confined to a few individuals, . . . the idea of dedication is negatived." [*Id.*, quoting 16 Am Jur 359.]

Our courts have likewise held that "there cannot be a dedication for private purposes or enjoyment . . . ." *West Michigan Park Ass'n v Dep't of Conservation*, 2 Mich App 254, 267; 139 NW2d 758 (1966); see also *Detroit Edison Co v Detroit*, 332 Mich 348, 353; 51 NW2d 245 (1952), and *Patrick, supra* at 191-192. Similarly, citing decisions from numerous other jurisdictions, 23 Am Jur 2d, Dedication, § 5, pp 7-8 (1983), states:

> The essence of dedication is that it shall be *for the use of the public at large*, that is, the general, unorganized public, and not for one person or a limited number of persons, or for the exclusive use of restricted groups of individuals. There may be a dedication for special uses, but it must be for the benefit of the public. *Properly speaking, there can be no dedication to private uses or for a purpose bearing an interest or profit in the land.* [Citations omitted; emphasis added.]

Our research has uncovered cases that use the term "dedication" loosely to describe grants, gifts, or easements of property to homeowners' associations or to specific persons or categories of persons. However, we note that those cases do not address dedications under the Subdivision Control Act or the Land Division Act. Unfortunately, the undisciplined use of the term dedication has led to some confusing and conflicting statements of the law. Specifically, in *Feldman v Monroe Twp Bd*, 51 Mich App 752, 754-755; 216 NW2d 628 (1974), this Court appeared to, without analysis, equate a private dedication with a statutory,

public dedication. We reject this conclusion in *Feld-man* because it is simply not supported by the cases cited, which refer only to private rights stemming from an intent to dedicate land to the *public* or for public purposes. See *Westveer v Ainsworth*, 279 Mich 580; 273 NW 275 (1937), and *Kirchen v Remenga*, 291 Mich 94; 288 NW 344 (1939).

We recognize that, were we to find that the plat proprietors intended to dedicate Outlot A to the public, "private rights to the use of [the] property arise and are in addition to the rights of the public acquired upon acceptance of the dedication." *In re Engelhardt*, 368 Mich 399, 402; 118 NW2d 242 (1962). Indeed, it remains the general rule that if a plat sets forth a public dedication that is not properly accepted by the township, property owners within the plat maintain a private right of use. *Nelson v Roscommon Co Rd Comm*, 117 Mich App 125, 132; 323 NW2d 621 (1982). Similarly, those who buy property relying on a public dedication in a plat may object to a petition to vacate the dedication on the basis of their private rights and as members of the public. *Engelhardt, supra* at 404; see also *Pulcifer v Bishop*, 246 Mich 579, 582; 225 NW 3 (1929). However, these private rights of the lot owners are rights of use " 'in the nature of private rights founded upon a grant or covenant' " as discussed above. *Id.* at 583, quoting Dillon on Municipal Corporations (5th ed), § 1090; see also *Schurtz v Wescott*, 286 Mich 691, 696-697; 282 NW 870 (1938).[11] *Pulcifer*, the case on which defendants pri-

---

[11] Further, while a grantee of property in a platted subdivision acquires a private right entitling him "to the use of the streets and ways laid down on the plat, regardless of whether there was a sufficient dedication and acceptance to create public rights," this does not extend to the interminable use of a lot improperly described as a statutory public dedication.

marily rely, specifically recognizes the distinction between rights acquired by the public through *dedication* and private rights founded on a *grant* or *covenant*. Defendants do not argue that Fritch or the developers intended a gift or grant of Outlot A to the other lot owners in the subdivision, though such a conveyance clearly falls within the ambit of the statute. *Knauff v Oscoda Co Drain Comm'r*, 240 Mich App 485, 489-490; 618 NW2d 1 (2000). Any such claim would fail in this case, however, because the document does not show the requisite donative intent. See *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm*, 236 Mich App 546, 554; 600 NW2d 698 (1999) (statutory dedication requires that the recorded plat evidence a clear intent by the plat proprietor to dedicate the designated area to public use); cf. *Ryan v Wilson*, 9 Mich 262 (1861) (a grantor's intent should clearly appear on the face of the document of conveyance), and *Davidson v Bugbee*, 227 Mich App 264, 268; 575 NW2d 574 (1997) (valid gift requires that the donor intend to transfer title gratuitously to the donee).

Further, had it been his intent, James Fritch could have transferred fee simple title to the disputed portion of Outlot A to all the lot owners or to a homeowner's association, but he did not do so. See *Musser v Loon Lake Shores Ass'n, Inc*, 384 Mich 616, 618, 622; 186 NW2d 563 (1971).

The fact that the defendant lot owners were beneficiaries of the restrictive use of Outlot A did not create a proprietary interest in Outlot A. Rather, the language at issue indicates an intent to create a private,

---

*Rindone v Corey Community Church*, 335 Mich 311, 317; 55 NW2d 844 (1952) (internal quotations omitted).

contractual right of use or an implied or restrictive covenant, reserving the use of Outlot A to subdivision lot owners. See *Dorfman v State Hwy Dep't*, 66 Mich App 1; 238 NW2d 395 (1975). For this reason, we hold that ¶ 17 of the restrictions document applies to the "reservation" of Outlot A, an issue not specifically addressed in the trial court's written opinion and order.

The restrictions document expressly refers to the plat documents at Liber 129, pages 29 and 30, the documents were executed and recorded at the same time and they relate to the same transaction. Further, copies of deeds for lots sold in the subdivision that were submitted by the parties not only refer to the plat, but specifically state that the deed is subject to recorded restrictions. Accordingly, we construe the documents together as one instrument for purposes of determining the rights of the lot owners. *West Madison Investment Co v Fileccia*, 58 Mich App 100, 106; 226 NW2d 857 (1975). Reading the documents together, we find that ¶ 17 clearly and unambiguously provides for a twenty-five-year duration for "[a]ll the restrictions, conditions, covenants, charges, easements, agreements and rights herein contained . . . ." Thus, as matter of law, the "reserved for the use of the lot owners" restriction expired in November 1994 and defendants, as lot owners, may not enforce it. See *Sampson v Kaufman*, 345 Mich 48, 52-53; 75 NW2d 64 (1956).

Because we conclude that plaintiffs prevail as a matter of law, a resort to equitable principles is not necessary. However, fairness compels us to observe that, for nearly thirty years, defendants never challenged the numerous private sales of the disputed portion of Outlot A or asserted their purported rights

when prior owners posted "No Trespassing" signs, and defendants failed to come forward with evidence that other lot owners actually used the disputed portion of the property. We also conclude that, on the basis of the continuous and unchallenged chain of title to the disputed portion of the outlot and the lack of evidence showing that the disputed portion was used in the manner for which it was intended, the reservation or restrictive covenant rendered little value to defendants and its intended purpose has failed. See *Cooper v Kovan*, 349 Mich 520, 531; 84 NW2d 859 (1957) (if the purpose for which a restriction was imposed can no longer be accomplished, equity may decline to enforce it); see also *Gomah v Hally*, 366 Mich 31, 34; 113 NW2d 896 (1962).

We also observe that defendants' claim of fee ownership of the disputed portion of Outlot A is logically incompatible with their actions regarding the remainder of the lot. Defendants individually failed to maintain the lot and failed to pay taxes on it, no homeowner's association was formed to collect money for upkeep or taxes, and such inaction led to the acquisition of title by the state. Indeed, we must logically conclude that, absent the private deed holders (including plaintiffs) who paid taxes on the property, the state would also have acquired title to the disputed portion of Outlot A. Thus, it is utterly disingenuous for defendants to now claim fee ownership of the disputed portion, thereby taking advantage of the deed holders' diligent payment of taxes, where defendants failed to show any exercise of the responsibilities of property ownership in the past. For this reason, we also believe our decision is consistent with principles requiring a manifest act of acceptance of "dedicated" property "to prevent land from becom-

ing waste property, owned or developed by no one," precisely what happened to the remainder of the outlot in this case. *Kraus, supra* at 424.

The trial court reached the correct result in this case and properly granted summary disposition to plaintiffs.

Affirmed.