FERA v VILLAGE PLAZA, INC.

OPINION OF THE COURT

1. LANDLORD AND TENANT—LEASES—NONJURY TRIAL PROVISION—
   WAIVER—EVIDENCE—COURT RULES.

   Waiver of a nonjury trial provision in a lease was properly found
   by a trial court where the plaintiffs had sued on the theory of a
   lost or destroyed lease, the defendants denied the lease for
   "lack of sufficient information to form a belief", plaintiffs
   thereafter demanded a jury trial without defense objection,
   although the missing lease contained a nonjury trial provision,
   the defendants never objected to a jury trial at the pretrial
   conference and in the pretrial summary, and where on the first
   day of trial one of the defendants finally produced the lease
   and plaintiffs submitted an unexecuted copy (GCR 1963,
   301.1[2], 301.3).

2. TRIAL—PRETRIAL SUMMARY—MODIFICATION—DISCRETION—COURT
   RULES.

   The modification of the pretrial summary at or before trial to
   prevent manifest injustice rests within the trial court's sound
   discretion (GCR 1963, 301.3).

3. ABANDONMENT—LANDLORD AND TENANT—LEASES—RIGHT OF OCCU-
   PANCY—BURDEN OF PROOF.

   Abandonment of a right of occupancy under a lease requires

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 47 Am Jur 2d, Jury §§ 86, 87.
   Validity and effect of contractual waiver of trial by jury, 73 ALR2d
   1332.
[2] 53 Am Jur, Trial § 11.
   Power of court to adopt general rule requiring pretrial conference
   as distinguished from exercising its discretion in each case sepa-
   rately, 2 ALR2d 1061.
[3] 49 Am Jur 2d, Landlord and Tenant § 304.
[4] 61 Am Jur 2d, Pleading §§ 93, 164.
[5] 5 Am Jur 2d, Appeal and Error §§ 819, 831.
[6, 7, 9–11] 49 Am Jur 2d, Landlord and Tenant §§ 183–190.
[8] 22 Am Jur 2d, Damages § 173.

proof of an intent to abandon and acts of abandonment and the burden of proof rests on the party asserting it.

4. PLEADING—AMENDMENTS—BREACH OF CONTRACT—MITIGATION OF DAMAGES—AFFIRMATIVE DEFENSE.

A trial court's failure to permit defendants to amend their pleadings to add failure to mitigate damages as an affirmative defense resulted in only harmless error; parties suing for breach of contract have the affirmative obligation to mitigate damages, the assertion of that defense could not have surprised plaintiffs, the issue was directly presented and the trial court properly instructed the jury about plaintiff's duty to minimize their damages.

5. APPEAL AND ERROR—QUESTION FOR JURY—FINDING OF FACT—EVIDENCE.

A jury's finding of inferiority of one location in a shopping center over another location will not be disturbed on appeal; the Court of Appeals cannot say as a matter of law that one location was superior because the issue was one for the jury and sufficient evidence supports the finding.

6. LANDLORD AND TENANT—BREACH OF LEASE—DAMAGES—LOSS OF PROFITS—NEW BUSINESS—INTERRUPTION OF ESTABLISHED BUSINESS.

The measure of damages when a lessor fails to give possession of the leased premises is the difference between the actual rental value and the rent reserved; if the business is a new one, since there could be no basis on which to estimate profits, the lessee must be content to recover according to the general rule, but if the business is an established one and it was interrupted, the lessee can recover lost profits estimated from evidence of profits before and after the interruption.

7. LANDLORD AND TENANT—BREACH OF LEASE—DAMAGES—LOSS OF PROFITS—EVIDENCE—INTERRUPTION OF ESTABLISHED BUSINESS.

Plaintiffs suing for breach of a lease because they were allegedly denied a certain location in a shopping center to operate a proposed "book and bottle" shop did not remove their attempted proof of lost profits from the realm of speculation, where the sole testimony supporting plaintiffs' claim for lost profits was the budget and proof of the option to purchase a liquor license; a mere showing that plaintiffs operated other bookstores and once operated a liquor store is insufficient to prove that the book and bottle shop, as an established business, had been "interrupted"; therefore, the measure of damages is

the difference between the actual rental value and the rent reserved.

8. DAMAGES—LOSS OF PROFITS—NEW BUSINESS.

Recovery of lost profits for a new business is precluded because no basis exists to estimate profits.

9. LANDLORD AND TENANT—BREACH OF LEASE—DAMAGES—LOSS OF PROFITS—EVIDENCE.

A tenant compelled to move in violation of a renewal agreement, who operated his business for some time, can clearly recover lost profits estimated from evidence of profits before and after his removal.

10. LANDLORD AND TENANT—BREACH OF LEASE—DAMAGES—LOSS OF PROFITS—QUESTION FOR JURY.

Plaintiffs who claimed lost profits because of breach of a lease where proofs were entirely speculative are barred from recovery; the issue was not jury-submissible.

DISSENT BY O'HARA, J.

11. DAMAGES—LOSS OF PROFITS—NEW BUSINESS.

*Lost profits for a* new *business should be recoverable as other damages where the proof is available and when proven, but the jury cannot be asked to guess, and they are to try the case upon evidence, not upon conjecture.*

Appeal from Wayne, Charles A. Wickens, J. Submitted Division 1 January 11, 1974, at Detroit. (Docket Nos. 14569–14570.) Decided April 26, 1974. Leave to appeal granted, 392 Mich 775.

Complaint by Anthony Fera and Frank Fera against Village Plaza, Inc., Fairborn Property Co., Inc., Schostak Brothers & Company, Inc., and Bank of the Commonwealth, for damages for breach of a lease. Verdict and judgment for plaintiffs. Defendants appeal. Reversed and remanded for a new trial on the issue of damages.

*Keywell & Rosenfeld* (by *Sidney L. Frank),* for plaintiffs.

*Milton Y. Zussman* and *Robert D. Kaplow,* for
defendants Village Plaza, Inc., and Fairborn Prop-
erty Co., Inc.

*Hammond, Ziegelman, Tennent, Merrill & Soti-
roff,* for defendants Schostak Brothers & Company,
Inc., and Bank of the Commonwealth.

Before: McGREGOR, P. J., and J. H. GILLIS and
O'HARA,* JJ.

J. H. GILLIS, J. Defendants Village Plaza, Inc.,
Fairborn Property Co., Inc., Schostak Brothers &
Company, Inc., and Bank of the Commonwealth
appeal a jury verdict awarding plaintiffs Frank
and Anthony Fera $200,000 for breach of a lease.

On January 14, 1965 plaintiffs Frank and An-
thony Fera signed an "intent to lease" and depos-
ited $1,000 as security on a location in Fairborn's
proposed Village Plaza shopping mall. On August
20, 1965, plaintiffs and agents of Fairborn-Village
Plaza executed a ten-year lease, for a "book and
bottle" shop at a certain contested location in the
mall at $1,000 minimum monthly rent and 6%
rent override on annual receipts in excess of $240,-
000.

Suffice it to say, complications arose. The mall,
scheduled for completion in 1966, suffered from 26
work stoppages, skyrocketing costs, and sundry
crises. Tenants did not move into the still unfin-
ished mall until 1969. Much earlier, in February
1967, Bank of the Commonwealth, the construc-
tion lender, accepted Fairborn's $5,750,000 mort-
gage on the mall. When Fairborn defaulted, the
permanent lender terminated its commitment. On
March 20, 1968, the bank took a deed in lieu of

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

foreclosure from Fairborn and Village Plaza, undertaking to complete and operate Village Plaza as Fairborn's "agent".[1] In August 1969 the bank reconveyed the property to Fairborn. In the interim, Schostak Brothers managed the property and served as leasing agent in the bank's behalf.

In late 1968, after finding an unexecuted lease for 576 feet, dated July 1967, Schostak's agent contacted plaintiffs. When plaintiffs asserted the existence of the prior lease, Schostak's agent requested production. However, the agent's demand could not be met because plaintiffs had surrendered their sole copy of the lease to Fairborn's agent for certain modifications. An impasse ensued. The agent claimed he offered plaintiffs "alternate space" which they accepted. Plaintiffs vehemently denied that contention. (When negotiations began, the disputed space was available; however, Schostak leased the contested space to third parties in late 1968 or early 1969.)

Plaintiffs had once operated a liquor store, and currently operated several bookstores. Since 1969, they have developed "Little Professor's", a 24-store franchise operation, in 17 states. Relying on that expertise to prove damages, Frank Fera submitted an annual budget for an unnamed year reflecting $18,000 first-year profits. He claimed a 6% profit increase each year thereafter. A defense expert testified a $14,000 loss would result.

The trial court excluded defense hearsay testimony about the bankruptcy of several Village Plaza stores, but permitted testimony about occupancy rates, traffic patterns and volume as relevant to lost profits.

A Liquor Control Commission regional supervi-

---

[1] The use of the term "agent" does not preclude our finding that the bank acted as a principal in the transaction.

sor and a former commission member both testified that the described book and bottle store could not obtain a license. Finally, defense witnesses testified that plaintiffs lost interest in the original space, refused an offer of better space, and never operated the business. The jury awarded $200,000 to plaintiffs, finding all four defendants liable.

Defense motions for directed verdict and new trial were denied.

On appeal, defendants claim the trial court erred in finding waiver of the nonjury trial provision in the lease. We do not agree. The instant pretrial proceedings support the trial judge's conclusion. Further, the sequence of events creates some doubts about the parties' good faith in the conduct of discovery proceedings. Plaintiffs had sued on the theory of a lost or destroyed lease executed in January, 1965. Defendants denied the lease for "lack of sufficient information to form a belief". Plaintiffs thereafter demanded a jury trial without defense objection, although the missing lease contained a nonjury trial provision. At the pretrial conference and in the pretrial summary, defendants never objected to the jury trial. On the first day of trial, some three years after filing of the complaint, answer, and commencement of discovery, defendant Fairborn produced at last the August, 1965, lease. Plaintiffs submitted an unexecuted copy. Defendant bank then moved to strike the jury, in contravention of the pretrial statement.

No error arose in finding waiver in these circumstances. GCR 1963, 301.1(2), provides:

"In every contested civil action the court shall direct the attorneys for the parties to appear before it for a conference to

\* \* \*

"(2) * * * determine whether a jury trial shall be had pursuant to demand, if any, theretofore made."

GCR 1963, 301.3, provides:

"The judge shall prepare, file, and cause to be served upon the attorneys of record, at least 10 days in advance of trial a summary of the results of the pretrial conference specifically covering each of the items herein stated. *The summary of results controls the subsequent course of the action unless modified at or before trial to prevent manifest injustice.*" (Emphasis supplied.)

The modification of the pretrial summary rests within the trial court's sound discretion. *Reinhardt v Bennett,* 45 Mich App 18; 205 NW2d 847 (1973). Different from *Reinhardt, supra,* where a disputed issue had been sufficiently raised in the pleadings to avoid unfair surprise, the nonjury trial provision here presumably caught plaintiffs unaware. While the waiver clause appeared in small print in plaintiffs' unexecuted lease copy, knowledge of that provision is more properly chargeable to defendants who used a variety of standard shopping center leases, some incorporating a waiver of jury trial provision. Even assuming plaintiffs were aware of that provision, defendants had the burden of timely assertion. Defendants' inaction permitted plaintiffs to assume defendants were satisfied with a jury trial. Assertion of the waiver provision could therefore have caused unfair surprise, even assuming some prior knowledge of that provision. The court rule requires a showing of manifest injustice. We find none.

Next, defendants claim that plaintiffs' failure to assert their right of occupancy under the lease estops them from suit. Abandonment requires proof of an intent to abandon and acts of abandon-

ment. *Log-Owners' Booming Co v Hubbell,* 135
Mich 65; 97 NW 157 (1903). The burden of proof
rests on the party asserting it. *West Michigan
Park Association v Department of Conservation,* 2
Mich App 254; 139 NW2d 758 (1966). The parties
introduced conflicting evidence as to acts of aban-
donment. The fact-trier's resolution of a disputed
factual issue will not be disturbed on appeal unless
no evidence supports that finding. Credibility is for
the jury. Here, the jury could have found that
plaintiffs' delay in asserting their rights could
reasonably be attributed to construction delays
and ongoing negotiations with Schostak's agent.
Failure to assert occupancy rights does not consti-
tute abandonment in this context.

The trial court did not permit defendants to
amend their pleadings to add failure to mitigate
damages as an affirmative defense. Since parties
suing for breach of contract have the affirmative
obligation to mitigate damages, *Van Lierop v
Chesapeake & O R Co,* 335 Mich 702; 57 NW2d 431
(1953), *cert den,* 346 US 834; 74 S Ct 40; 98 L Ed
357 (1953), the assertion of that defense could not
have surprised plaintiffs.

However, the issue was directly presented, and
the trial court properly instructed the jury about
plaintiffs' duty to minimize their damages. Only
harmless error arose from failure to permit
amendment of the pleadings.

Testimony presented by defendants contended
that they offered plaintiffs an alternate and supe-
rior location in the plaza. Plaintiffs testified that
the sought-after space was unique and the prof-
fered location was inferior to the agreed-on space.
We cannot say as a matter of law that the alter-
nate space was superior; the issue was one for the
jury. Since sufficient evidence supports the jury's

necessary finding of inferiority, we do not disturb that finding.

We cannot conclude, however, that sheer volume of testimony in this case removed the plaintiffs' attempted proof of lost profits from the realm of speculation. We, therefore, reverse and remand for a new trial on the issue of damages. The sole testimony supporting plaintiffs' claim for lost profits is the budget and proof of the option to purchase a liquor license.

A mere showing that plaintiffs operated other bookstores, and once operated a liquor store, is insufficient to prove this business had been "interrupted" as our cases have defined it. This case, therefore, does not fall within the exception to the ancient rule:

> "[T]he measure of damages when a lessor fails to give possession of the leased premises is the difference between the actual rental value and the rent reserved. 1 Sedgwick on Damages (8th Ed), § 185. Mr. Sedgwick says:
>
> " 'If the business were a new one, since there could be no basis on which to estimate profits, the plaintiff must be content to recover according to the general rule.'
>
> "The rule is different where the business of the lessee has been interrupted. *Taylor v Cooper,* 104 Mich 72; 62 NW 157 (1895)." *Jarrait v Peters,* 145 Mich 29, 31; 108 NW 432 (1906).

These circumstances do not warrant treating the proposed book and bottle store as an established business. *Cf. Jarrait v Peters, supra,* p 32.

The rationale which precludes recovery of lost profits for a new business is simply that no basis exists to estimate profits. Plaintiffs' testimony about future profits is incompetent because speculative. See *Taylor v Cooper,* 104 Mich 72, 75; 62 NW 157 (1895); *Stern Co v Friedman,* 229 Mich

623; 201 NW 961 (1925). A tenant compelled to move in violation of a renewal agreement, who operated his business for some time, can clearly recover lost profits estimated from evidence of profits before and after his removal. *Rooks v Booth,* 160 Mich 62; 125 NW 69 (1910). Similarly, in *Redinger v Standard Oil Co,* 6 Mich App 74; 148 NW2d 225 (1967), where plaintiff had operated exactly the same business in the new location, albeit for a short time, he could rely on lost profits as a measure of damages.

While *Sinclair Refining Co v Gutowski,* 195 F2d 637 (CA 6, 1952), states the modern trend and perhaps better rule,[2] the Court in that case did not consider extant Michigan authority, never overruled, cited *supra.* We do not, therefore, read that case as relevant authority.

We think different considerations are attendant upon damages for breach of a lease than affect other contract breaches. Given ancient authority, never overruled, only the Supreme Court has the prerogative to blur those distinctions; ours is to follow settled authority.

Assuming, however, *Sinclair Refining Co v Gutowski, supra,* is reliable authority, plaintiffs are barred from recovery because proof of lost *profits* was entirely speculative. The issue was not jury-submissible.

---

[2] "Appellant contends that the judgment for $8,000.00 should be set aside because it represents the loss to appellee of prospective damages; that the Sinclair station was a new business, and that the profits therefrom to appellee would be too speculative. There was expert testimony to the effect that this amount would represent the minimum profit that would be realized. *We cannot say that the amount so fixed was not the natural and probable consequences of the breach or within the reasonable contemplation of the parties.* We find no reason for setting it aside or disturbing the discretion of the Court in sustaining it. See *Marquette Cement Mfg Co v Campbell Const Co,* 6 Cir, 184 F2d 352, 354 [1950]." *Sinclair Refining Co v Gutowski,* 195 F2d 637, 640–641 (CA 6, 1952).

Plaintiffs are entitled to recover their $1,000 deposit.

The trial court erroneously permitted lost profits as the measure of damages for breach of the lease.

In light of our conclusion, other allegations of error are rendered moot.

Reversed and remanded for a new trial on the issue of damages, not inconsistent with this opinion. No costs, neither party having prevailed in full.

McGREGOR, P. J., concurred.

O'HARA, J. *(dissenting)*. I do not agree with the apparent holding of the majority that recovery of lost profits for a *new* business can never be had because the testimony necessary to sustain such an award would always be too speculative and conjectural.

I rely on the following:

"It has *sometimes* been stated as a rule of law that prospective profits are so speculative and uncertain that they cannot be recognized in the measure of damages. This is not because they are profits, but because they are so often not susceptible of proof to a reasonable degree of certainty. *Where the proof is available, prospective profits may be recovered, when proven, as other damages.* But the jury cannot be asked to guess. They are to try the case upon evidence, not upon conjecture." *Isbell v Anderson Carriage Co,* 170 Mich 304, 318; 136 NW 457, 462 (1912). See also 51C CJS, Landlord & Tenant, § 314(2), p 795; 49 Am Jur 2d, Landlord & Tenant, § 187, p 211; 88 ALR2d 1024, 1039. (Emphasis supplied.)

Since Supreme Court authority is conflicting, I believe I am permitted to choose precedent. I opt for the Sixth Circuit holding as the better rule.

See *Sinclair Refining Co v Gutowski,* 195 F2d 637 (CA 6, 1952), cited in fn 2 of Judge J. H. GILLIS' opinion.

In the instant case, proof of loss of profits from liquor sales is totally speculative and should not have been submitted to the jury. The proof of loss from operation of bookstores by the plaintiffs was sufficiently explicit to provide a reasonable basis for the jury to infer what profits plaintiffs would have earned had the lease agreement not been breached.

Pursuant to the well-established practice in Michigan of either granting a new trial or allowing a remittitur of that portion of the verdict which is excessive, I would affirm the lower court judgment conditioned upon plaintiffs consenting, within 30 days following the release of this opinion, to remitting that portion of the judgment in excess of $60,000. Otherwise the judgment should be reversed and a new trial had. Plaintiffs are also entitled to the return of the $1,000 deposit paid to an officer of defendants Village Plaza and Fairborn.