FERA v VILLAGE PLAZA, INC

Docket No. 55910. Argued June 3, 1975 (Calendar No. 1).—Decided June 3, 1976. Rehearing denied 397 Mich 956.

Plaintiffs Anthony Fera and Frank Fera were awarded damages by a jury in Wayne Circuit Court, Charles A. Wickens, J., against defendants Village Plaza, Inc., Fairborn Property Co., Inc., Schostak Brothers & Company, Inc., and Bank of the Commonwealth, for loss of anticipated profits of their proposed new business as a result of breach of a lease. The Court of Appeals, McGregor, P. J., and J. H. Gillis, J. (O'Hara, J., dissenting), reversed and remanded for a new trial on the amount of damages, holding that lost profits for a new business were not a proper element of damages and that plaintiffs' proofs of lost profits were speculative (Docket Nos. 14569, 14570). Plaintiffs appeal and defendants cross-appeal. *Held:*

    1. A new business may recover anticipated lost profits for breach of contract. The issue is one of sufficiency of proof. In order to be entitled to a judgment for damages for breach of contract, a plaintiff must lay a basis for a reasonable estimate of the extent of his harm, measured in money. Future profits are not excluded as an element of damages unless they are uncertain; in any case where future profits may be established with reasonable certainty they are allowed.

    2. In this case testimony concerning future profits was conflicting but the jury apparently believed the plaintiffs' evidence concerning the likelihood that their business would have made profits if the contract had been performed. There was expert testimony to support the jury's finding.

    Justice Coleman, concurring in part and dissenting in part, would hold that proof of loss from the plaintiffs' proposed bookstore operation was properly submitted to the jury, but that lost profits from liquor sales, under the facts of this case, could not be determined with a reasonable degree of certainty.

REFERENCES FOR POINTS IN HEADNOTES
[1] 22 Am Jur 2d, Damages §§ 173, 174.
[2] 22 Am Jur 2d, Damages § 296.
[3, 4] 22 Am Jur 2d, Damages §§ 173, 296.

The plaintiffs had not obtained a liquor license; there was evidence that they would not be able to obtain a license and the proofs of possible profits were so speculative that the issue of profits from liquor sales should not have been submitted to the jury, and the judgment should be affirmed on the condition that the plaintiffs consent to remitting that portion in excess of $60,000 plus their deposit, otherwise reversed and remanded for a new trial.

Reversed and judgment on the verdict reinstated.

52 Mich App 532; 218 NW2d 155 (1974) reversed.

OPINION OF THE COURT

1. DAMAGES—LOST PROFITS—NEW BUSINESS—BREACH OF LEASE.

A new business may recover anticipated lost profits of breach of a contract to lease real property where the plaintiff establishes the profits with reasonable certainty.

2. DAMAGES—LOST PROFITS—PROOFS—DISCRETION.

The trial court has a large amount of discretion in determining whether to submit the question of profits lost by a breach of contract to the jury, and when it is submitted, the jury will have a large amount of discretion in determining the amount of its verdict; where injury to some degree is found, recovery is not precluded for lack of precise proof, particularly where it is the defendant's own act or neglect which has caused the imprecision.

3. DAMAGES—LOST PROFITS—NEW BUSINESS—PROOFS.

Proofs of lost profits of a new business caused by breach of a lease were not too speculative for submission to the jury where the plaintiff presented the testimony of experts who had had experience in the business, including the plaintiff himself, the defendant countered with the testimony of other experts, and both sides covered the issue thoroughly on direct and cross-examination.

OPINION CONCURRING IN PART AND DISSENTING IN PART

COLEMAN, J.

See headnote 1.

4. DAMAGES—LOST PROFITS—NEW BUSINESS—PROOFS.

*Proofs of lost profits of a new retail liquor business caused by breach of a lease were too speculative for submission to the jury where the plaintiff had no liquor license and expert witnesses testified that the plaintiff could not have obtained a*

*license for the proposed business, and the testimony on antici-
pated profits was disputed.*

*Keywell & Rosenfeld* (by *Sidney L. Frank* and
*Christopher Jeffries)* for plaintiffs.

*Zussman, Doctoroff, Wartell & Kaplow* for de-
fendants Village Plaza, Inc., and Fairborn Prop-
erty Co., Inc.

*Hammond, Ziegelman & Sotiroff* (by *Lawrence
R. Abramczyk)* for defendants Schostak Brothers &
Company, Inc., and Bank of the Commonwealth.

KAVANAGH, C. J. Plaintiffs received a jury award
of $200,000 for loss of anticipated profits in their
proposed new business as a result of defendants'
breach of a lease. The Court of Appeals reversed.
52 Mich App 532; 218 NW2d 155 (1974). We re-
verse and reinstate the jury's award.

## FACTS

On August 20, 1965 plaintiffs and agents of
Fairborn-Village Plaza executed a ten-year lease
for a "book and bottle" shop in defendants' pro-
posed shopping center. This lease provided for
occupancy of a specific location at a rental of
$1,000 minimum monthly rent plus 5% of annual
receipts in excess of $240,000. A $1,000 deposit was
paid by plaintiffs.

After this lease was executed, plaintiffs gave up
approximately 600 square feet of their leased
space so that it could be leased to another tenant.
In exchange, it was agreed that liquor sales would
be excluded from the percentage rent override
provision of the lease.

Complications arose, including numerous work
stoppages. Bank of the Commonwealth received a

deed in lieu of foreclosure after default by Fairborn and Village Plaza. Schostak Brothers managed the property for the bank.

When the space was finally ready for occupancy, plaintiffs were refused the space for which they had contracted because the lease had been misplaced, and the space rented to other tenants. Alternative space was offered but refused by plaintiffs as unsuitable for their planned business venture.

Plaintiffs initiated suit in Wayne Circuit Court, alleging *inter alia* a claim for anticipated lost profits. The jury returned a verdict for plaintiffs against all defendants for $200,000.

The Court of Appeals reversed and remanded for new trial on the issue of damages only, holding that the trial court "erroneously permitted lost profits as the measure of damages for breach of the lease". 52 Mich App 532, 542; 218 NW2d 155, 160.

In *Jarrait v Peters,* 145 Mich 29, 31–32; 108 NW 432 (1906), plaintiff was prevented from taking possession of the leased premises. The jury gave plaintiff a judgment which included damages for lost profits. This Court reversed:

"It is well settled upon authority that the measure of damages when a lessor fails to give possession of the leased premises is the difference between the actual rental value and the rent reserved. 1 Sedgwick on Damages (8th ed), § 185. Mr. Sedgwick says:

" 'If the business were a new one, since there could be no basis on which to estimate profits, the plaintiff must be content to recover according to the general rule.'

"The rule is different where the business of the lessee has been interrupted.

* * *

"The evidence admitted tending to show the prospective profits plaintiff might have made for the ensuing two years should therefore have been excluded under the objections made by defendant, and the jury should have been instructed that the plaintiff's damages, if any, would be the difference between the actual rental value of the premises and the rent reserved in the lease."

Six years later, in *Isbell v Anderson Carriage Co*, 170 Mich 304, 318; 136 NW 457 (1912), the Court wrote:

"It has sometimes been stated as a rule of law that prospective profits are so speculative and uncertain that they cannot be recognized in the measure of damages. This is not because they are profits, but because they are so often not susceptible of proof to a reasonable degree of certainty. Where the proof is available, prospective profits may be recovered, when proven, as other damages. But the jury cannot be asked to guess. They are to try the case upon evidence, not upon conjecture."

These cases and others since should not be read as stating a rule of law which prevents *every* new business from recovering anticipated lost profits for breach of contract. The rule is merely an application of the doctrine that "[i]n order to be entitled to a verdict, or a judgment, for damages for breach of contract, the plaintiff must lay a basis for a reasonable estimate of the extent of his harm, measured in money". 5 Corbin on Contracts, § 1020, p 124. The issue becomes one of sufficiency of proof. "The jury should not [be] allowed to speculate or guess upon this question of the amount of loss of profits". *Kezeli v River Rouge Lodge IOOF*, 195 Mich 181, 188; 161 NW 838 (1917).

"Assuming, therefore, that profits prevented may be considered in measuring the damages, are profits to be divided into classes and kinds? Does the term 'speculative profits' express one of these classes, differing in nature from nonspeculative profits? Do 'uncertain' profits differ in kind from 'certain' profits? The answer is assuredly, No. There is little that can be regarded as 'certain,' especially with respect to what would have happened if the march of events had been other than it in fact has been. Neither court nor jury is required to attain 'certainty' in awarding damages; and this is just as true with respect to 'value' as with respect to 'profits'. Therefore, the term 'speculative and uncertain profits' is not really a classification of profits, but is instead a characterization of the evidence that is introduced to prove that they would have been made if the defendant had not committed a breach of contract. The law requires that this evidence shall not be so meager or uncertain as to afford no reasonable basis for inference, leaving the damages to be determined by sympathy and feelings alone. The amount of evidence required and the degree of its strength as a basis of inference varies with circumstances." 5 Corbin on Contracts, § 1022, pp 139–140.

The rule was succinctly stated in *Shropshire v Adams,* 40 Tex Civ App 339, 344; 89 SW 448, 450 (1905):

"Future profits as an element of damage are in no case excluded merely because they are profits but because they are uncertain. In any case when by reason of the nature of the situation they may be established with reasonable certainty they are allowed."

It is from these principles that the "new business"/"interrupted business" distinction has arisen.

"If a business is one that has already been established a reasonable prediction can often be made as to

its future on the basis of its past history. * * * If the business * * * has not had such a history as to make it possible to prove with reasonable accuracy what its profits have been in fact, the profits prevented are often but not necessarily too uncertain for recovery." 5 Corbin on Contracts, § 1023, pp 147, 150–151.

*Cf Jarrait v Peters, supra.*

The Court of Appeals based its opinion reversing the jury's award on two grounds: First, that a new business cannot recover damages for lost profits for breach of a lease. We have expressed our disapproval of that rule. Secondly, the Court of Appeals held plaintiffs barred from recovery because the proof of lost profits was entirely speculative. We disagree.

The trial judge in a thorough opinion made the following observations upon completion of the trial.

"On the issue of lost profits, there were days and days of testimony. The defendants called experts from the Michigan Liquor Control Commission and from Cunningham Drug Stores, who have a store in the area, and a man who ran many other stores. The plaintiffs called experts and they, themselves, had experience in the liquor sales business, in the book sales business and had been representatives of liquor distribution firms in the area.

"The issue of the speculative, conjectural nature of future profits was probably the most completely tried issue in the whole case. Both sides covered this point for days on direct and cross-examination. The proofs ranged from no lost profits to two hundred and seventy thousand dollars over a ten-year period as the highest in the testimony. A witness for the defendants, an expert from Cunningham Drug Company, testified the plaintiffs probably would lose money. Mr. Fera, an expert in his own right, testified the profits would probably be two hundred and seventy thousand dollars. The jury found two hundred thousand dollars. This is

well within the limits of the high and the low testimony presented by both sides, and a judgment was granted by the jury.

* * *

"The court cannot invade the finding of fact by the jury, unless there is no testimony to support the jury's finding. There is testimony to support the jury's finding. We must realize that witness Stein is an interested party in this case, personally. He is an officer or owner in Schostak Brothers. He may personally lose money as a result of this case. The jury had to weigh this in determining his credibility. How much credibility they gave his testimony was up to them. How much weight they gave to counter-evidence was up to them.

* * *

"The court must decide whether or not the jury had enough testimony to take this fact from the speculative-conjecture category and find enough facts to be able to make a legal finding of fact. This issue [damages for lost profits] was the most completely tried issue in the whole case. Both sides put in testimony that took up days and encompassed experts on both sides. This fact was adequately taken from the category of speculation and conjecture by the testimony and placed in the position of those cases that hold that even though loss of profits is hard to prove, if proven they should be awarded by the jury. In this case, the jury had ample testimony to make this decision from both sides.

* * *

"The jury award was approximately seventy thousand dollars less than the plaintiffs asked and their proofs showed they were entitled to. The award of the jury was well within the range of the proofs and the court cannot legally alter it, as determination of damages is a jury function and their finding is justified by the law in light of the evidence in this case.

* * *

"The loss of profits are often speculative and conjectural on the part of witnesses. When this is true, the court should deny loss of profits because of the speculative nature of the testimony and the proofs. However,

the law is also clear that where lost profits are shown, and there is ample proof on this point, they should not be denied merely because they are hard to prove. In this case, both parties presented testimony on this issue for days. This testimony took the lost profits issue out of the category of speculation and conjecture. The jury was given an instruction on loss of profits and what the proofs must show, and the nature of the proofs, and if they found them to be speculative they could not award damages therefor. The jury, having found damages to exist, and awarded the same in this case in accord with the proper instructions, the court cannot, now, overrule the jury's finding."

As Judge Wickens observed, the jury was instructed on the law concerning speculative damages. The case was thoroughly tried by all the parties. Apparently, the jury believed the plaintiffs. That is its prerogative.

The testimony presented during the trial was conflicting. The weaknesses of plaintiffs' specially prepared budget were thoroughly explored on cross-examination. Defendants' witnesses testified concerning the likelihood that plaintiffs would not have made profits if the contract had been performed. There was conflicting testimony concerning the availability of a liquor license. All this was spread before the jury. The jury weighed the conflicting testimony and determined that plaintiffs were entitled to damages of $200,000.

As we stated in *Anderson v Conterio,* 303 Mich 75, 79; 5 NW2d 572 (1942):

"The testimony * * * is in direct conflict, and that of plaintiff * * * was impeached to some extent. However, it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it. The credibility of witnesses is for the jury, and it is not for us to determine who is to be believed."

The trial judge, who also listened to all of the conflicting testimony, denied defendants' motion for a new trial, finding that the verdict was justified by the evidence. We find no abuse of discretion in that decision. *Sloan v Kramer-Orloff Co,* 371 Mich 403; 124 NW2d 255 (1963). "The trial court has a large amount of discretion in determining whether to submit the question of profits to the jury; and when it is so submitted, the jury will also have a large amount of discretion in determining the amount of its verdict." 5 Corbin on Contracts, § 1022, pp 145–146.

" '[W]here injury to some degree is found, we do not preclude recovery for lack of precise proof. We do the best we can with what we have. We do not, "in the assessment of damages, require a mathematical precision in situations of injury where, from the very nature of the circumstances precision is unattainable." Particularly is this true where it is defendant's own act or neglect that has caused the imprecision.' " *Godwin v Ace Iron & Metal Co,* 376 Mich 360, 368; 137 NW2d 151 (1965).

While we might have found plaintiffs' proofs lacking had we been members of the jury, that is not the standard of review we employ. "As a reviewing court we will not invade the fact-finding of the jury or remand for entry of judgment unless the factual record is so clear that reasonable minds may not disagree." *Hall v Detroit,* 383 Mich 571, 574; 177 NW2d 161 (1970). This is not the situation here.

The Court of Appeals is reversed and the trial court's judgment on the verdict is reinstated.

Costs to plaintiffs.

WILLIAMS, FITZGERALD, and LINDEMER, JJ., concurred with KAVANAGH, C. J.

LEVIN and RYAN, JJ., took no part in the decision of this case.

COLEMAN, J. *(concurring in part, dissenting in part).* Although anticipated profits from a new business may be determined with a reasonable degree of certainty such was not the situation regarding loss of profits from liquor sales as proposed by plaintiffs.

First, plaintiffs had no license and a Liquor Control Commission regional supervisor and a former commissioner testified that the described book and bottle store could not obtain a license. Further, the proofs of possible profits from possible liquor sales—if a license could have been obtained —were too speculative. The speculation of possible licensing plus the speculation of profits in this case combine to cause my opinion that profits from liquor sales should not have been submitted to the jury.

I agree with Judge O'HARA in his Court of Appeals dissent and would have allowed proof of loss from the bookstore operation to go to the jury, but not proof of loss from liquor sales. His remedy is also approved. I would affirm the trial court judgment conditioned upon plaintiffs' consenting within 30 days following the release of this opinion, to "remitting that portion of the judgment in excess of $60,000. Otherwise, the judgment should be reversed and a new trial had". Plaintiffs are also entitled to the $1,000 deposit.