**HUNTERS INTERNATIONAL MANU-FACTURING CORPORATION, and Maurice Furlong**

v.

**CHRISTIANA METALS CORPORATION, Bishop Tube Company, Arthur Seiler, Donald Hedges, and Sono Steel Division of Sonobond Corporation, Individually, Jointly, and Severally.**

Civ. A. No. 78–70637.

United States District Court,
E.D. Michigan, S.D.

Aug. 16, 1982.

Caleb M. Simon, Birmingham, Mich., for plaintiffs.

Wallace M. Handler, Birmingham, Mich., for defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

PATRICIA J. BOYLE, District Judge.

This is a contract action in which plaintiffs sued defendants for breach of an agreement to provide steel tubing for plaintiffs' production of stainless steel arrows. Plaintiffs seek damages for the alleged loss of anticipated profits in its new arrow business which is attributable to defendants' breach. This matter was tried before a jury which found that both parties had breached the contract, that the defendants had committed the first substantial breach, and that plaintiffs were entitled to damages in the amount of One Hundred Ninety Thousand and 00/100 Dollars ($190,000.00). This matter is now before the court on defendants' Motion for Judgment Notwithstanding the Verdict pursuant to Fed.R. Civ.P. 50(b).

During the trial, plaintiffs introduced, as proof of actual lost profits damages, the testimony of a certified public accountant who had projected the anticipated profits of plaintiffs' new business. Defendants objected to the admission of this testimony as substantive evidence on the ground that the accountants projections were made before the business was put into operation and were based wholly upon statements of plaintiff's president, Maurice Furlong, as to the number of arrows to be manufactured and sold. Also during the course of trial, plaintiffs introduced the Luterman Report, a document previously prepared by defendants which includes a projection of defendants' potential profits from the marketing of a stainless steel arrow. Defendants objected to the admission of this report as substantive evidence of lost future profits, noting that no foundation was laid by plaintiffs prior to its introduction. Defendants made a timely motion for directed verdict on December 9, 1981, raising as a basis for the motion the fact that plaintiffs had failed to offer any substantive evidence of damages based on loss of future profits or otherwise.

Defendants bring the instant motion for judgment notwithstanding the verdict, once again noting the non-existence of evidence in the record to support the jury's finding of damages.

On the present motion, defendants contend that the Luterman Report, which was prepared by defendants as a projection of profits that would result from the successful marketing of the arrow, was admissible at trial for the limited purpose of showing that defendants did in fact conduct a market survey of the stainless steel arrow, or as evidence of defendants' intent to engage as a competitor in the stainless steel arrow business, but that there was no foundation set forth at any time during the trial which would permit the use of the report as substantive evidence of alleged lost profit damages of the plaintiffs. Additionally, defendants argue, plaintiffs offered no evidence throughout the trial concerning its sales or inventory records; in fact, the evidence which was admitted indicated that plaintiffs operated at a loss during the period of time that it was actively engaged in business.

As a second ground for the motion, defendants claim that plaintiffs failed to prove its breach of contract claim as a matter of law. In support of this argument, defendants note that plaintiffs accepted several shipments of steel tubing

without any notification to defendants that it was non-conforming. Defendants argue further that even if defendants did breach the contract by supplying defective goods, the breach had no legal effect because plaintiffs exercised dominion over the shafts and failed to comply with the legal requirements for actual or physical rejection of the goods.

Plaintiffs respond on the damages issue that lost profits were demonstrated with a reasonable degree of certainty and that therefore the case was properly submitted to the jury for a determination of the amount of damages. Plaintiffs suggest that proof of lost profits is demonstrated through the "projections" made by its accountant witness, and circumstantially, by way of the Luterman Report. This document, a compilation of reports by persons in the archery industry, indicates that the archery industry is very profitable on the whole, that arrows comprise 40 percent of the industry sales, and that the stainless steel shaft has a performance advantage over the conventional aluminum shaft provided "manufacturing problems can be solved and shafts will spin true ...."

■ The standard which governs the court's decision on this Motion for Judgment Notwithstanding the Verdict under Fed.R.Civ.P. 50(b) is similar to that governing a motion for directed verdict. That is, the verdict of the jury will stand unless reasonable minds could not differ as to the conclusions to be drawn from the evidence. The court must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence. *See generally* 5A *Moore's Federal Practice* § 50.07(2) (1981); 9 A. Wright and C. Miller, *Federal Practice & Procedure* § 2524 (1971).

The issue on the instant motion is whether plaintiffs' proofs justified the submission of a claim to the jury for damages based on lost profits.[1]

■ The loss of anticipated profits of a new business is a proper element of damages in a breach of contract case under Michigan law provided that the injured party establishes proof of profits to a reasonable degree of certainty. *Fera v. Village Plaza, Inc.,* 396 Mich. 639, 242 N.W.2d 372 (1976). In *Fera,* the plaintiff brought suit for breach of a contract to lease space for a book and liquor store within defendant's proposed shopping center. Opposing parties offered testimony lasting days and including experts from both sides. The trial court noted that the lost profits issue was "the most completely tried issue in the whole case." *Id.* 645, 242 N.W.2d 372. On appeal, the Supreme Court of Michigan held that the extensive testimony took the future profits issue out of the category of speculation and conjecture.

■ As noted by the *Fera* court, future profit damages are difficult to prove because there is generally no past history of earnings by which to measure what lost profits would have resulted had the breach not occurred. *Id.* The injured party can overcome this difficulty, however, by offering thorough and extensive evidence, including the testimony of experts and evidence of the past history and earnings of related businesses in the area. Where the injured party claims loss of · prospective profits of an enterprise venturing into a new industry or method, it becomes even more difficult to lay a reasonably accurate basis for damages because of the paucity of proofs and the lack of similar businesses in the area from which to estimate profits. In an early Michigan case, *Isbell v. Anderson Carriage Co.,* 170 Mich. 304, 318, 136 N.W. 457 (1912), the court declined to send the issue of lost profits to the jury because the contract breached was for a commercial agency to sell a commodity, electric automobiles, for which there were many uncertainties and no established market.

---

1. Because this issue is dispositive of defendants' motion, the court need not address defendants' second assertion that plaintiffs' con-
tract claim also should not have been submitted to the jury.

In the instant situation, plaintiffs sought to manufacture a steel-shafted arrow, which was an innovation in the archery industry and a new product which had not been successfully made before and had no established market. Plaintiffs allege that its business was potentially highly profitable but that it failed due to the defective steel tubing received from defendants. After careful review of the available evidence offered by plaintiffs as a foundation for estimating its prospective profits, this court finds that, in contrast to those offered in the *Fera* case, the available proofs are speculative at best and insufficient to provide a reasonably accurate estimate from which the jury could award money damages.

In determining whether the plaintiffs set forth a foundation sufficient to submit the damages issue to the jury, this court has considered the testimony of Morris Smith, plaintiffs' certified public accountant, on the projected profits of plaintiffs over a two-year period. Smith's testimony was that of a layperson,[2] and as a nonexpert he could testify solely from his personal knowledge. Fed.R.Evid. 602. Consequently, to the extent that he relied on sales invoices from prospective buyers of the arrows as the basis for his projections, his testimony is without foundation, there being no showing of his personal knowledge of the contents of the invoices. Moreover, the invoices were introduced by plaintiffs en masse as a stack of papers, with no further explanation as to who signed the orders or as to the price of arrows to be purchased. In addition, to the extent that Smith relied on statements made by Furlong regarding the number of arrows to be sold, the price per arrow, and so forth, his testimony is also without foundation because any projection made by Furlong was necessarily speculative and conjectural since plaintiffs' business was not yet operational. Finally, even if Smith had been entitled to testify as an expert in his capacity as a certified public accountant, no foundation was set forth to suggest that he had expertise in forecasting profits for a new and untried business concern such as that of plaintiffs.

With regard to the Luterman Report offered by the plaintiffs as substantive proof of plaintiffs' lost profits, I note several difficulties. First, to the extent that the report is offered to prove the truth of the matter asserted, as urged by plaintiffs, there are hearsay and double hearsay problems. Even assuming Mr. Luterman could be shown to be an agent of defendants and his statements were admissible as a party admission, there remains the underlying problem of the original source of the data. It appears that much of the data originates from sporting goods journals, such as *The Sporting Goods Dealer, The Tanis Group,* and *Archery Retailer.*

Beyond the threshold evidentiary problems with the Luterman Report, the court has serious doubts as to whether it does in fact demonstrate plaintiffs' loss of future profits. The report discusses the archery industry in general terms and the potential market for the steel-shafted arrow, and examines the advisability of defendants entering into this market. It makes no reference to, nor does it purport to address, plaintiffs' marketing of the stainless steel arrow. Even if this general prognosis of the marketability of steel arrows could be related to plaintiffs' sale of the arrows, there remains no evidence in the Luterman Report or elsewhere in the record that would demonstrate plaintiffs' anticipated profits with a reasonable degree of certainty. For example, there is no projection of plaintiffs' business output, pricing, or geographical market. Moreover, the report itself, on which plaintiffs rely almost exclusively for the lost profits claim, states that the steel arrow could perform better than the aluminum arrow *provided* its "manufacturing problems can be solved and shafts will spin true."

---

**2.** Plaintiffs were precluded by the court from introducing testimony of experts in these proceedings, having failed to identify any experts in the course of discovery in violation of the court's pretrial order.

Applying the standard set forth in *Fera v. Village Plaza,* noted earlier, this court concludes that plaintiffs did not demonstrate their damages with any degree of certainty and that the jury, when left with the task of deciphering plaintiffs' lost future profits from the accountant's projections or from the Luterman Report, was forced to calculate damages impermissibly on the basis of speculation and conjecture.

Accordingly, IT IS HEREBY ORDERED that defendants' Motion for Judgment Notwithstanding the Verdict is GRANTED.