*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MSY CAPITAL PARTNERS, LLC,

        Plaintiff/Counterdefendant-
        Appellant/Cross-Appellee,

v

PREMIER CAR WASH COMPANY, LLC,

        Defendant/Counterplaintiff-
        Appellee/Cross-Appellant,

and

ARTHUR J. BOTT, SR.,

        Defendant-Appellee/Cross-Appellant,

and

BENCHMARK CAPITAL MANAGEMENT, LLC,
MATTHEW FOX, JOHN DOE, and JANE DOE,

        Defendants.

UNPUBLISHED
June 16, 2022

No. 356268
Oakland Circuit Court
LC No. 2018-169817-CB

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

In this action for breach of a purchase agreement involving the sale of real property, plaintiff, MSY Capital Partners, LLC, appeals as of right the trial court's order of dismissal entered after the court granted a motion for involuntary dismissal brought by defendants, Premier Car

Wash Company, LLC ("Premier"), and Arthur Bott (collectively "defendants"),[1] at a bench trial. Defendants have also filed a cross-appeal. We affirm.

## I. OVERVIEW

Plaintiff and defendants negotiated plaintiff's purchase from Premier of real property in the city of Battle Creek (the "City"). The property was in a "green zone," meaning that it was eligible for use as a medical marihuana facility (MMF) under the Michigan Medical Marihuana Act, MCL 333.26421 *et seq*. The City's ordinance provided a procedure for obtaining a permit to operate a cannabis provisioning center. The applicant was required to submit documentation that it owned or leased green-zone property for the facility. If the applicant was buying green-zone property, it was required to provide documentation that the seller of the property consented to the buyer's plan of opening an MMF. In August 2017, plaintiff and defendants executed a purchase agreement that stated a purchase price of $700,000 for the property and required defendants to cooperate with plaintiff's planned use of the property. Bott signed a statement of consent informing the City that he supported and approved of plaintiff's plan to use the property as an MMF. In September 2017, the City issued plaintiff a 90-day conditional permit. Plaintiff began to prepare site plans and building plans as the next steps toward obtaining final approval.

In October 2017, Bott repudiated the purchase agreement with plaintiff and executed a purchase agreement with Green Peak Industries, LLC ("Green Peak"), which also intended to use the property for an MMF. Bott notified the City that he had revoked his approval of plaintiff's MMF, but granted his approval for Green Peak's facility. The City notified plaintiff that its conditional permit was canceled. Plaintiff brought this action against defendants for specific performance, injunctive relief, breach of the purchase agreement, and related claims. Defendants acknowledged that they wrongfully breached the purchase agreement. They notified the City that they were reinstating their consent to plaintiff's MMF. Defendants paid the $5,000 application fee for plaintiff's renewed permit application. Premier brought a counterclaim against plaintiff to require plaintiff to perform its contractual obligations to cooperate with the permit approval process.

In April 2019, the parties negotiated an addendum (the "2019 Addendum") to the purchase agreement. They agreed that plaintiff would deposit $250,000 into an escrow account. They stipulated to the dismissal of plaintiff's claims against Premier, except for any monetary damages from breach of the purchase agreement, and the dismissal of Premier's counterclaim. They agreed that if plaintiff received an award of monetary damages, it would be offset against the balance of payment that plaintiff owed to defendants. On April 19, 2019, the parties closed the sale of the property. Plaintiff then resold the property to Acreage One for a purchase price in excess of $900,000. Following a bench trial on plaintiff's claim for monetary damages, the trial court found that plaintiff failed to prove that it suffered damages in excess of its profit from the resale of the property to Acreage One. The trial court therefore granted defendants' motion for involuntary dismissal.

---

[1] Additional defendants were dismissed before trial and are not parties to this appeal. Accordingly, the only participating defendants, Premier and Bott, will be collectively referred to as defendants.

The trial court also concluded that none of the parties were prevailing parties for purposes of awarding contractual attorney fees. Defendants moved for enforcement of the 2019 Addendum, release of the escrowed funds, and an order for plaintiff to pay the balance of the purchase price. The trial court denied the motion on the ground that it had entered a final order resolving all issues and lacked jurisdiction over the claims in defendants' motion.

## II. PLAINTIFF'S APPEAL

## A. ORDER TO DISMISS

Plaintiff argues that the trial court erred by dismissing its claim for monetary damages. We disagree.

"In an action, claim, or hearing tried without a jury, after the presentation of the plaintiff's evidence, the court, on its own initiative, may dismiss, or the defendant, without waiving the defendant's right to offer evidence if the motion is not granted, may move for dismissal on the ground that, on the facts and the law, the plaintiff has no right to relief." MCR 2.504(B)(2).[2] In reviewing a trial court's decision on a motion for involuntary dismissal under MCR 2.504(B)(2), this Court reviews issues of law de novo, and the trial court's findings of fact are reviewed for clear error. See *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 238; 615 NW2d 241 (2000).

Although plaintiff intended to operate a MMF on the property, it later sold the property for an amount in excess of what it paid defendants for the property. At trial, however, plaintiff sought recovery of damages for lost profits it allegedly would have received if it had obtained a license and operated an MMF on the property. In support of this claim, plaintiff presented the testimony of Melvin Sams, a certified public accountant, who testified regarding revenue earned by another marijuana dispensary in Bay County. Sams concluded that plaintiff would have earned $1,300,000 to $1,500,000 in gross revenue if it had opened in October 2017, but admitted that he did not know if it was feasible that plaintiff could have begun operations in the relevant time frame.

After plaintiff rested, defendants moved for involuntary dismissal under MCR 2.504(B)(2). Regarding damages, the trial court found:

I really do have to agree with defense that unless or until you are able to proceed with having the property built and ready for obtaining licensure from the State of Michigan that there wouldn't have been any lost profits as indicated by your . . . damages expert because that is all speculative and circumstantial, it's just not feasible . . . .

The trial court acknowledged that plaintiff obtained licensure in June 2019 and sold the property with the licensure in place. However, the trial court stated that plaintiff also failed to

---

[2] Plaintiff refers to defendant's motion as a motion for a directed verdict. A motion for directed verdict in a bench trial is actually a motion for involuntary dismissal pursuant to MCR 2.504(B)(2), and will be treated as such on appellate review. *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 235 n 2; 615 NW2d 241 (2001).

provide testimony "as to what the value of that property would have been at the point in time you sold it, if you had been able to sell it earlier what the difference would have been."

Plaintiff argues that it provided sufficient evidence to determine the profits it would likely have earned if defendants had not disrupted the licensure process. "Before lost profits are recoverable, they must be proven with a reasonable degree of certainty as opposed to being based on mere conjecture or speculation." *In re MCI Telecom Corp Complaint*, 240 Mich App 292, 315; 612 NW2d 826 (2000) (quotation marks and citation omitted). In *Fera v Village Plaza, Inc*, 396 Mich 639, 643; 242 NW2d 372 (1976), our Supreme Court held that a new business is not categorically precluded from "recovering anticipated lost profits for breach of contract," but such claims for damages are subject to the doctrine "that '(i)n order to be entitled to a verdict, or a judgment, for damages for breach of contract, the plaintiff must lay a basis for a reasonable estimate of the extent of his harm, measured in money.' " *Id*. at 643, quoting 5 Corbin on Contracts, § 1020, p 124. The issue is thus "one of sufficiency of proof," in which the finder of fact is not permitted " 'to speculate or guess upon this question of the amount of loss of profits.' " *Fera*, 396 Mich at 643, quoting *Kezeli v River Rouge Lodge IOOF*, 195 Mich 181, 188; 161 NW 838 (1917). The Court in *Fera* further explained:

> 'Assuming, therefore, that profits prevented may be considered in measuring the damages, are profits to be divided into classes and kinds? Does the term 'speculative profits' express one of these classes, differing in nature from nonspeculative profits? Do 'uncertain' profits differ in kind from 'certain' profits? The answer is assuredly, No. There is little that can be regarded as 'certain,' especially with respect to what would have happened if the march of events had been other than it in fact has been. Neither court nor jury is required to attain 'certainty' in awarding damages; and this is just as true with respect to 'value' as with respect to 'profits'. Therefore, the term 'speculative and uncertain profits' is not really a classification of profits, but is instead a characterization of the evidence that is introduced to prove that they would have been made if the defendant had not committed a breach of contract. The law requires that this evidence shall not be so meager or uncertain as to afford no reasonable basis for inference, leaving the damages to be determined by sympathy and feelings alone. The amount of evidence required and the degree of its strength as a basis of inference varies with circumstances.' [*Fera*, 396 Mich at 644, quoting Corbin on Contracts, § 1022, pp 139-140.]

The Court in *Fera* concluded that the plaintiff's claim for lost future profits for breach of a lease was not speculative. *Id*. at 645. The Court explained that the plaintiff called expert witnesses who gave testimony regarding their retail experience in the area, and the evidence established a range from no lost profits to $270,000 over a 10-year period. *Id*. The jury's finding of $200,000 in lost profits was within this range. *Id*. at 645-646.

In this case, plaintiff's claim for damages was complicated by plaintiff's sale of the property to a third party for a profit of at least $200,000 over its own purchase price from the defendants. "[A] breach of contract imposes on the plaintiff a duty to mitigate damages." *Lorenz Supply Co v American Standard, Inc*, 100 Mich App 600, 610; 300 NW2d 335 (1980). The trial court did not isolate the issue of lost profits from mitigation, but considered whether the evidence

-4-

showed with reasonable certainty that plaintiff lost out on an opportunity for further profit by not being able to open the provisioning center on plaintiff's original schedule. The trial court stated:

> [T]here hasn't been any testimony as to what you would have done had you gotten it earlier, what those costs would have been had you been able to move earlier, and at what point would you have been able to go to the State to obtain licensure to be able to use that as a provisional center to get those monies. And that hasn't come forth.

To the extent that Sams's testimony was competent to show with a reasonable degree of certainty anticipated revenue from on ongoing MMF, as the trial court observed, there were other deficiencies in the evidence related to plaintiff's claim of lost profits, given that plaintiff never actually opened an MMF and the evidence did not sufficiently demonstrate how soon plaintiff would have been able to obtain the necessary licensure to operate an MMF if it had been able to move sooner, or the costs involved in establishing the property as an operational MMF. The trial court, as the trier of fact, had reasonable bases for questioning the reliability of plaintiff's proffered evidence of lost profits.

Moreover, because defendant's motion was brought under MCR 2.504(B)(2), the trial court, as the trier of fact, was not obligated to view the evidence in a light most favorable to plaintiff or to determine whether the evidence established a factual dispute regarding plaintiff's claim of lost profits. See *Marderosian v Stroh Brewery Co*, 123 Mich App 719, 724; 333 NW2d 341 (1983). Rather, the trial court was permitted to determine whether plaintiff's witnesses were credible and properly could evaluate the weight and reliability of plaintiff's evidence, which included Sams's testimony, to determine whether it was sufficient to persuade the court of lost profits with a reasonable degree of certainty. *Id*. Further, the trial court's findings of fact are reviewed for clear error. *Sands Appliance Servs*, 463 Mich at 235-236 n 2. Pursuant to this standard, plaintiff has not demonstrated that the trial court clearly erred by finding that it failed to prove lost profits with reasonable certainty.

## B. CONTRACTUAL ATTORNEY FEES

Plaintiff argues that the trial court erred by rejecting its claim that it was the prevailing party, and thereby entitled to attorney fees and costs under the parties' purchase agreement. We disagree.

A trial court's decision to grant or deny attorney fees pursuant to a contractual provision is reviewed for abuse of discretion. *Mitchell v Dahlberg*, 215 Mich App 718, 729; 547 NW2d 74 (1996). However, the interpretation of a contract is a question of law reviewed de novo. *DaimlerChrysler Corp v G-Tech Prof Staffing, Inc*, 260 Mich App 183, 184-185; 678 NW2d 647 (2003). The trial court necessarily abuses its discretion when it makes an error of law. *Gentris v State Farm Mut Auto Ins Co*, 297 Mich App 354, 364; 824 NW2d 609 (2012).

The purchase agreement provided, in pertinent part:

> This Agreement shall be governed by laws of the State of Michigan, and any action brought with respect to this Agreement shall be brought in a court of competent jurisdiction in Oakland County, Michigan. In any action brought with

respect to this agreement, the prevailing party shall be entitled to recover actual attorney's fees and costs from the non-prevailing party.

Plaintiff argues that, despite the trial court's dismissal of its remaining claim at the bench trial, it still should be considered the prevailing party because of defendants' prior payment of the $5,000 application fee to the City after defendants conceded that it breached the purchase agreement. The trial court rejected this argument, stating: "[H]ad you paid additionally $5,000.00 for the subsequent application that would have been damages, but you didn't, Mr. Bott took care of paying that so the court doesn't see them as damages." This finding is not erroneous. It is undisputed that plaintiff never incurred that expense. The second payment of $5,000 did not come from plaintiff's pockets, nor was it directly ordered by the trial court to be paid by defendants, so plaintiff did not suffer damages in that regard. See *Black's Law Dictionary* (7th ed) (defining "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury"). Therefore, plaintiff was not the "prevailing party" in an action for the purposes of the purchase agreement, and the trial court did not err by refusing to award plaintiff contractual attorney fees.

## III. CROSS-APPEAL

### A. CONTRACTUAL ATTORNEY FEES

Defendants argue on cross-appeal that the trial court erred by denying their request for contractual attorney fees. They argue that they were the prevailing parties because plaintiff's claim was dismissed at trial. We disagree.

Preliminarily, we disagree with defendants' claim that the trial court failed to state its reasons for denying contractual attorney fees. After the trial court denied defendants' request, plaintiff's counsel clarified for the record that the court had determined that defendants were not prevailing parties, and the court agreed with this statement.

A contractual fee-shifting provision is an exception to the American rule that each party bears its own litigation expenses. *ABCS Troy, LLC v Loancraft, LLC*, 337 Mich App 125, 132-133; 972 NW2d 317 (2021). "Courts should construe contracts so as to give effect to every word or phrase as far as practicable." *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017) (quotation marks and citation omitted).

Although the purchase agreement provides that "the prevailing party shall be entitled to recover actual attorney's fees and costs from the non-prevailing party," the agreement does not define the terms "prevailing party" or "non-prevailing party." The word "shall" "generally indicates a mandatory, rather than permissive, duty." *People v Kern*, 288 Mich App 513, 519; 794 NW2d 362 (2010).

Defendants argue that they were the prevailing parties because they prevailed on the sole claim at trial. Plaintiff counters that defendants were not the prevailing parties because they conceded that they breached the purchase agreement and conceded liability for the reapplication fee. These arguments require us to consider whether a party's status as a prevailing party depends on the overall proceedings or on the one claim that was resolved by the trial court.

Similar to the contract at issue, MCL 600.2591 provides that a prevailing party shall be awarded costs and fees to be imposed against a nonprevailing party who asserts a frivolous claim or defense. That statute defines a "prevailing party" as "a party who wins on the entire record." MCL 600.2591(3)(b). "[W]here there is a single cause of action, it is not necessary for a plaintiff to recover the full amount of damages prayed for in order to be considered a prevailing party in determining the award of costs and fees." *Van Zanten v H Vander Laan Co, Inc*, 200 Mich App 139, 141; 503 NW2d 713 (1993). In *Van Zanten*, this Court stated that a plaintiff who pleaded "three different theories of why she was entitled to recover damages against defendant," and "each of those theories sought to recover for the same injury," it was only necessary to prevail on one of those theories to be a prevailing party because "each of those theories sought to recover for the same injury and recovery under any theory would have allowed plaintiff to recover the full measure of her damages." *Id*.

Under MCR 2.625(B), which provides rules for determining the prevailing party for purposes of awarding costs, "[t]he fact that [a] plaintiff did not obtain the total amount of damages sought does not prohibit him from being the prevailing party . . . ." *McMillan v Auto Club Ins Ass'n*, 195 Mich App 463, 466; 491 NW2d 593 (1992). However, "where a party does not succeed on its claim, it is not a prevailing party even if its position is improved as a result of the litigation." *Id*., citing *Marine Bay Condos, Inc v Schlegel*, 167 Mich App 602; 423 NW2d 284 (1988).

In *Mitchell*, 215 Mich App at 729, the parties' land contract provided that "the prevailing party *may* recover all costs and expenses incurred in connection with the action, including reasonable attorney fees." (Emphasis added.) The plaintiffs in that case brought a complaint asserting multiple claims. The defendants filed a counterclaim for foreclosure. The parties stipulated to dismissal with prejudice of the plaintiffs' claims, but allowed the plaintiffs to bring the claims in arbitration. The plaintiffs did so and received an award in their favor. *Id*. at 721-722. The defendants proceeded in court with the foreclosure claim. *Id*. This Court summarized the trial court proceedings as follows:

> The parties each moved for summary disposition of defendants' foreclosure claim; plaintiffs asserted that the arbitrator's finding in their favor of the fraud and misrepresentation claim constituted a complete defense to defendants' foreclosure action. Plaintiffs conceded, however, that defendants had a breach of contract claim against them. Both motions were ultimately denied, and a bench trial was held. The trial court denied defendants' claims for acceleration of the land contract balance and for immediate possession, ordered plaintiffs to tender to defendants all past-due land contract payments, and denied the parties' claims for attorney fees. The trial court's judgment provided that plaintiffs may offset both the past-due payments and the monthly installments against the arbitrator's award to them. These appeals followed. [*Id*. at 722-723.]

The plaintiffs argued that they should be granted attorney fees "because they prevailed on their counterclaim for judgment on the arbitration award and defendants were denied their claims for foreclosure and acceleration of the land contract balance . . . ." *Id*. at 729. The trial court found "that neither party prevailed in full and therefore neither was entitled to attorney fees." *Id*. at 729. This Court held that denial of attorney fees was not an abuse of discretion because the plaintiffs did not prevail on the issue of paying interest on their unpaid payments. *Id*.

The instant case is unique because defendants admitted fault and voluntarily agreed to most of the nonmonetary relief that plaintiff sought. *Mitchell* recognizes that a trial court may reject attorney fees altogether where both parties failed to prevail, but the contract in *Mitchell* is distinguishable from the situation before us because the contractual attorney-fee provision in *Mitchell* was discretionary. The central question here is whether defendants can be said to have prevailed when they acceded to all of plaintiff's claims except monetary damages, and plaintiff received no monetary damages at trial.

As such, the trial court in the matter before us did not abuse its discretion or misconstrue the contract when it concluded that neither party fully prevailed in this action. Defendants were nonprevailing parties with respect to the stipulations admitting their liability for breach of the purchase agreement. Indeed, defendants paid the $5,000 application fee for plaintiff's renewed permit application as an indirect result of this litigation. Plaintiff was a nonprevailing party with respect to the claims dismissed pursuant to the parties' stipulations and with respect to the sole claim resolved at trial as it received no monetary damages. Under the circumstances, the trial court did not abuse its discretion by determining that none of the parties were prevailing parties.

## B. MOTION TO ENFORCE 2019 ADDENDUM

Defendants also argue on cross-appeal that the trial court erred by denying their postjudgment motion to enforce the parties' settlement agreement, as represented by the 2019 Addendum.

The parties' second stipulated order stated:

[T]he only claim remaining before this Court for trial, pursuant to the Court's March 4, 2019 Stipulated Order, is Plaintiff's claim for breach of the August 17, 2018 real estate purchase agreement against Defendant Premier. Premier has admitted that it breached the real estate purchase agreement . . . . At trial, the Court will determine whether Premier's breach of the agreement proximately caused Plaintiff to suffer damages, subject to Defendant's affirmative and other defenses, and if so, the amount of any such damages that Plaintiff is entitled to recover under law and contract.

The 2019 Addendum was part of the purchase agreement between the parties. The parties agreed that the fulfillment of the 2019 Addendum was conditional upon the outcome of the trial. The trial court's decision denying plaintiff monetary damages for breach of the original purchase agreement gave rise to defendants' right to obtain the escrowed funds in the amount $250,000. However, determination of the parties' obligations and rights under the 2019 Addendum is not a simple matter of adjusting the purchase price according to the trial court's award of damages. Plaintiff's representative, Jeff Yatooma, testified that the 2019 Addendum lowered the purchase price to $250,000. Defendants argued in their posttrial motion that plaintiff still owed an additional $450,000 from the original purchase agreement. This dispute would have to be addressed, however it exceeds the scope of the parties' stipulated agreement to limit the trial issue to plaintiff's damages in the matter now before us. Additionally, the dispute involves Madison Settlement Services, LLC, the escrow agent, who is not a party to this action. Under these circumstances, the

trial court did not err by declining to address defendants' postjudgment motion to enforce the 2019 Addendum.

## IV. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan